Donald E. COLYER *v.* STATE of Arkansas

CA CR 82-37                                   652 S.W.2d 645

Court of Appeals of Arkansas
Opinion delivered June 22, 1983

*Hewett & Hewett,* by: *Carol Hewett,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Donald E. Colyer appeals his convictions of possession of a controlled substance with intent to deliver and possession of a firearm by a convicted felon.

Prior to trial, appellant's motion to suppress evidence seized during the police inventory of appellant's vehicle was denied and that evidence was introduced at trial. At the suppression hearing, Larry Hughes of the Berryville Police Department was the only witness and he testified that he and Officer Lovett responded to a telephone call reporting a truck stuck in the mud at the corner of Baker and Doxey Streets in Berryville. They went to that location and found the appellant behind the wheel of a station wagon trying to extricate it from a mud hole in the street which was under repair. The vehicle was hopelessly stuck and the officers offered to call a wrecker to pull it out and the appellant agreed.

Hughes further testified that he noticed there were no tags on the car and that appellant explained that he had just bought it, had been moving around quite a bit, and had just been buying temporary tags. The officers then obtained the appellant's driver's license and had him wait in his car while they returned to the patrol car to summon a wrecker and to run a routine identification check on the license. The check revealed that there were outstanding warrants for appellant from Madison County and from Rogers, Arkansas.

When the wrecker arrived, the officers advised appellant he was under arrest for those warrants and, since he appeared to be intoxicated, for being drunk on the highway. (Apparently public drunkeness. *See* Ark. Stat. Ann. § 48-943 [Repl. 1977]). Lovett then took appellant in the patrol car to the Carroll County Jail and Hughes directed that the car be towed to the jail parking lot before being taken to the storage yard.

At the lot, pursuant to standard department policy, Hughes and Lovett inventoried the vehicle. Hughes testified

that the purpose of the inventory was to protect the department, the wrecker company, and the defendant by listing any valuables the subject might have in his car so that later there couldn't be a charge that something was missing or in case vandals got into the vehicle and stole the owner's possessions. He also testified that the officers anticipated appellant would be transported to Madison County that night.

In making the inventory, the officers found in the passenger compartment a number of cassettes, beer and whiskey, and three affidavits of citizenship made out in different names with appellant's picture on them, one in the glove compartment and two on the floorboard. Hughes testified that as he crawled on his knees on the back seat to look behind it, the seat gave way and he saw in plain view a paper bag with a plastic bag inside it; he pulled out the plastic bag and it contained thirteen smaller bags of green vegetable material; and the standard field test on this material came back positive for marijuana. A loaded .22 rifle was also found in the folded-up portion of the rear of the wagon where the spare tire is normally kept. Hughes testified that they checked that compartment because they didn't want the owner to come back later and say somebody stole a brand new tire.

Based on this testimony, the trial judge found that the officers' initial intrusion into the vehicle was reasonable and followed a lawful impoundment of the vehicle. Citing Rule 12.6 (b) of the Arkansas Rules of Criminal Procedure, *South Dakota* v. *Opperman,* 428 U.S. 364 (1976), and *Lipovich* v. *State,* 265 Ark. 55, 576 S.W.2d 720 (1979), the judge found that the search was not unreasonable under the Fourth Amendment to the United States Constitution and denied appellant's motion to suppress.

On appeal, appellant contends the trial court erred in denying the motion to suppress and he challenges the necessity for the impoundment and inventory and the scope of the search which revealed the marijuana and rifle.

*Impoundment and Inventory*

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In *Cady* v. *Dombrowski*, 413 U.S. 433 (1973), the Court said that the Fourth Amendment, made applicable to the states by the Fourteenth, was not violated when the Wisconsin police made a warrantless search of Dombrowski's automobile. The Court agreed that the police properly removed the vehicle from the road as Dombrowski was drunk and the vehicle was disabled and constituted a traffic hazard. The Court also agreed that the search of the vehicle made by the police was "standard procedure" and not unreasonable.

In *South Dakota* v. *Opperman, supra,* the Court found that a warrantless search was not unreasonable where a car had been impounded by the police for multiple parking violations and, following standard procedures, the police inventoried the contents of the car and discovered marijuana in the glove compartment. As part of what it had called "community caretaking functions" in *Cady,* the Court said that the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

Citing *Cady* and *Opperman,* the Arkansas Supreme Court in *Lipovich* v. *State, supra,* said the warrantless inventory of a U-Haul truck was reasonable as part of the police "community caretaking functions" where the process was aimed at securing or protecting the vehicle, its contents and the public, rather than detecting or acquiring evidence relating to a criminal violation. The court concluded that the actions of the officers were reasonable and followed sound police practices, since they were dealing with a rented vehicle which its owner considered stolen and was found temporarily abandoned and posing a hazard on the highway.

In our case, the appellant had no license affixed to his vehicle as required by law and it was stopped in the

intersection of two city streets. Appellant appeared intoxicated and couldn't dislodge the car from the mud without assistance. As the state notes in its brief, appellant was a self-proclaimed transient with no apparent ties to the community. After his vehicle had been pulled from the mud, the officers would have the duty to restrain appellant from driving the vehicle in his drunken condition, and they could not wait until he sobered up to arrange for its removal. Moreover, as the appellant was to be transported elsewhere after his arrest, he couldn't take the vehicle with him. Under these circumstances, we think it is clear that the officers had good cause to impound appellant's vehicle under our Criminal Procedure Rule 12.6 (b), and that their actions were reasonable under Fourth Amendment standards.

Arkansas Criminal Procedure Rule 12.6 (b) provides:

A vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents.

The appellant argues, however, that the inventory in this case was not made for the "safekeeping of the vehicle and its contents" but as a pretext for an investigatory search in violation of A.R.Cr.P. Rule 12.6 (b) and the Fourth Amendment. It is certainly true that *Opperman* recognized the possibility that the right to make an inventory search could be abused and the Court specifically noted that there was no suggestion that the inventory in that case was a pretext concealing an investigatory police motive.

Our standard of review is set out in *State* v. *Tucker*, 268 Ark. 427, 597 S.W.2d 584 (1980), where the court said:

On appeal we make an independent determination, based on the totality of the circumstances, as to whether evidence obtained by means of a warrantless search, as here, should be suppressed, and the trial court's finding will not be set aside unless it is clearly

against the preponderance of the evidence or clearly erroneous.

Although the appellant argues that the procedures here are vague and the officers' actions suspicious, the trial court cited both A.R.Cr.P. Rule 12.6 (b) and *Opperman* and made the specific finding that the search was not unreasonable. Under the evidence and the law, we cannot hold that the trial judge's finding is clearly erroneous.

For various reasons, the cases cited by appellant do not persuade us to a contrary view. In *State* v. *Slockbower*, 397 A.2d 1050 (N.J. 1979), for example, the *trial judge* held that the impoundment had been a pretext to justify a prior search. In our case, however, the trial judge held differently. In *Miller* v. *State*, 403 So. 2d 1307 (Fla. 1981), the court said:

> What we hold is that an officer, when arresting a present owner or possessor of a motor vehicle, must advise him or her that the vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment. An inventory search of a motor vehicle without such advice or consultation to a present owner or possessor upon arrest results in an unreasonable search under the United States and Florida constitutions and must be excluded under the Florida constitutional exclusionary rule.

While we think that alternatives to impoundment are proper considerations, we think this is simply a factor to be considered in determining what is reasonable. We note this was also the view taken by the two dissenting judges in *Miller*. Certainly the requirement of *Miller* is not a Fourth Amendment requirement. *Opperman* quoted with approval from an earlier opinion that said the "test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." And we do not think *Miller's* requirement is a requirement under Arkansas law; nor do we think it should be.

*Seizure of the Marijuana*

Appellant argues that the warrantless search of the paper bag discovered when the back seat gave way was unreasonable, exceeded the permissible limits of A.R.Cr.P. Rule 12.6 (b), and violated his constitutional rights. We do not agree.

It is appellant's position that the inspection of the contents of a paper bag does little to advance the legitimate purposes of safekeeping the vehicle and its contents. Moreover, he contends, the officer could have removed the bag, stapled it, and placed it with appellant's other personal effects, or that he could have simply left it where it was and placed the seat back in its original position.

Let us first isolate the principle involved. A.R.Cr.P. Rule 12.6 (b) provides that a vehicle in custody may be searched at such times and to such extent as is *reasonably necessary* for safekeeping of the vehicle and its contents. The Fourth Amendment prohibits *unreasonable* searches and seizures.

As appellant's brief points out, this is an inventory search case and not a probable cause case like *United States* v. *Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Here the police were not looking for contraband or evidence of a crime. They were seeking to safeguard the contents of the vehicle and to protect themselves as well. Given the factual finding made by the trial judge, we cannot assume that Officer Hughes was making an investigative search. Therefore, once the paper bag was unintentionally discovered, it was the officer's duty to safeguard its contents and we are not willing to say that he acted unreasonably when he determined what those contents were instead of following one of the alternatives suggested by appellant.

*Search of the Tire Compartment*

The appellant also contends that the officer's inspection of the spare tire compartment, in which the rifle was discovered, exceeded that which was reasonably necessary to

safeguard the contents of the vehicle and that this violated his constitutional rights. He asserts that the spare tire compartment is analogous to the trunk of a car and relies on *U.S.* v. *Lawson,* 487 F.2d 468 (8th Cir. 1973).

In the first place, many cases do not agree with *Lawson* which held that a gun found in the trunk of an impounded automobile should be suppressed. In *Cady* the United States Supreme Court approved a search of the trunk of an impounded car. The Eighth Circuit's decision in *Lawson* is also contrary to decisions in some of the other circuits. *See United States* v. *Edwards,* 577 F.2d 883 (5th Cir. 1978); *United States* v. *Balanow,* 528 F.2d 923 (7th Cir. 1976); and *United States* v. *Martin,* 566 F.2d 1143 (10th Cir. 1977). But we think the real principle involved is ably discussed in a later Eighth Circuit case, *United States* v. *Wilson,* 636 F.2d 1161 (8th Cir. 1980).

In *Wilson* the court held that because the defendant was present and could have arranged to remove his car without the necessity of police impoundment, or because the police could have inventoried the locked trunk as a unit without opening it, or because other alternatives were available, the inventory search of the trunk was unreasonable within the meaning of the Fourth Amendment. Under the circumstances there involved, we might not disagree with the decision in *Wilson,* but the circumstances in the case at bar are different from those.

Without belaboring the point, it is enough to say that under the circumstances here, we do not think the trial court was clearly wrong in holding that it was not unreasonable for the officer to raise the folded-up portion in the rear of the station wagon to determine whether there was a spare tire in that compartment.

The judgment of the trial court is affirmed.

COOPER, J., concurs.

CORBIN and GLAZE, JJ., dissent.

JAMES R. COOPER, Judge, concurring. I agree with the result reached by the majority opinion in the case at bar, but feel compelled to express some observations on both the majority and dissenting opinions. I am neither as convinced as the majority, nor as unconvinced as the dissenter, about the degree of the appellant's intoxication, but I think both opinions have overemphasized that fact. The appellant had several outstanding warrants from other counties, and we do not know, nor did the arresting officers, what crimes the appellant was charged with having committed. Unlike *United States* v. *Wilson*, 636 F.2d 1161 (8th Cir. 1980), where the officers were only going to retain possession of Wilson's vehicle for a short time prior to his posting an appearance bond, it is quite reasonable to assume that the appellant in the case at bar was going to be in custody for more than a short period of time. The appellant's intoxication, the outstanding warrants, the location of his vehicle, the lack of anyone available to take care of the vehicle, all support the trial court's initial finding that the impoundment of the vehicle was lawful under Rule 12.6, A.R.Cr.P.

In *Wilson, supra,* the real issue before the court was not the validity of the impoundment, as assumed by both majority and dissenting opinions, but the *scope* of the inventory. All of the incriminating evidence which Wilson sought to suppress was found in the *trunk* of his vehicle. For that reason alone I find *Wilson* so dissimilar as to lack any persuasiveness. The appellant's car had no trunk, it being a station wagon. The inventory of the interior of the vehicle is permitted by Rule 12.6, A.R.Cr.P. and I believe that the officers did not violate the appellant's rights under the Fourth Amendment to the United States Constitution.

Since I agree with both the majority and dissenting opinions that we should not adopt the rule enunciated in *Miller* v. *State*, 403 So.2d 1307 (Fla. 1981), I find it unnecessary to discuss that case or its facts, except to observe that such requirements would probably be best imposed by the General Assembly, in the event they are deemed desirable. The requirements imposed in *Miller* are clearly in conflict with both the letter and spirit embodied in Rule 12.6, A.R.Cr.P.

TOM GLAZE, Judge, dissenting. This case involves the inventory search of appellant's vehicle. As the result of the search, appellant was charged with and convicted of the possession of a firearm by a convicted felon and possession of a controlled substance with intent to deliver. Appellant contends that the arresting officers' impoundment and search of his station wagon violated (1) Rule 12.6 (b) of the Arkansas Rules of Criminal Procedure and (2) his rights that are secured by the State and federal constitutions to be free from unreasonable search and seizure.

The relevant facts are undisputed. On February 28, 1981, two police officers, Hughes and Lovett, were summoned to assist with a vehicle which was stuck in mid. The officers found the appellant attempting to dislodge his car. Appellant asked the officers if they could push him out of the mud with their patrol car. The officers said that they could not; they offered to call a wrecker. Appellant agreed. Officer Lovett noticed there were no tags on the car. Appellant explained that he had just bought the car and had purchased temporary tags. The officers ran an identification check on appellant's driver's license when they called for a wrecker. They learned there were outstanding warrants for appellant's arrest from Madison County and the City of Rogers. The officers did not know the nature of the charges for which the warrants had been issued.

When the wrecker arrived at the scene, the officers placed appellant under arrest for drinking on the highway. Officer Hughes testified that he had smelled alcohol and had determined that appellant was inebriated. Officer Lovett took appellant to the Carroll County jail, and Hughes stayed with the vehicle until the wrecker pulled it out of the mud. Hughes asked the wrecker driver to take the vehicle to the parking lot of the Carroll County jail before moving it to the storage yard. Both Lovett and Hughes then inventoried the car in accordance with what they stated was departmental policy.

In their search, they found three affidavits of citizenship, two in the right front floorboard and one in the glovebox. The affidavits were made out in different names

but each had appellant's picture on it. Cassette tapes, whiskey and beer were also discovered. Officer Hughes testified that he crawled up on the back seat on his knees to look over behind the seat when the seat gave way, permitting him to see a paper bag with a plastic sack inside it. He pulled out the plastic sack and discovered it contained thirteen smaller bags of a green, vegetable material. He then checked the spare wheel compartment inside the station wagon and found a .22 long semi-automatic rifle which was loaded.

At trial, the appellant unsuccessfully attempted to suppress the contraband found in the inventory search. The State's position throughout the suppression hearing was that the vehicle was impounded to protect the owner's property and to protect the police and wrecker service from claims for stolen property. In overruling appellant's motion to suppress, the trial court relied on *South Dakota* v. *Opperman*, 428 U.S. 364 (1976), and *Lipovich* v. *State*, 265 Ark. 55, 576 S.W.2d 720 (1979). In *Opperman*, the court upheld an inventory search of a car which had been impounded for multiple parking violations, when the car's owner was not present to make other arrangements for the safekeeping of his belongings. In *Lipovich*, the court upheld a warrantless search of an abandoned U-Haul rental truck which was causing a traffic hazard on the highway and which the owner advised police was stolen. The Arkansas Supreme Court affirmed the trial court's denial of the defendant's motion to suppress certain contraband contained in the truck and held that there was no violation of Rule 12.6 (b) or any infringement of constitutional rights.

Unlike the facts at bar, both *Opperman* and *Lipovich* involved sitautions in which the lawful impoundment of the cars took place when the car owners were not present. Here, the appellant was present, and the impoundment and search of his station wagon was conducted pursuant to Rule 12.6 (b), which provides:

> (b) A vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent

as is reasonably necessary for safekeeping the vehicle and its contents.

Rule 12.6 (b) has been construed by our Supreme Court on only two occasions, in *Lipovich, supra,* and in the earlier case of *Goodwin* v. *State,* 263 Ark. 856, 568 S.W.2d 3 (1978). In *Goodwin,* the Supreme Court ruled a Rule 12.6 (b) search illegal when there was no evidence that the seized truck had been used to transport controlled substances. The court held the inventory search could not be sustained because no basis for the seizure was established.

The threshhold issue to be decided is whether the police lawfully impounded appellant's car. If so, the legality or permissibility of the scope of the search becomes moot. In arguing that the impoundment was illegal, appellant relies on the case of *Miller* v. *State,* 403 So. 2d 1307 (Fla. 1981). In *Miller,* the arresting officers stopped the defendant after he drove through a red light. He gave the officers another person's driver's license receipt, and he was subsequently arrested for obstruction of justice. The officers later inventoried defendant's car and found a controlled substance. At trial, the defendant moved to suppress because the officers had searched without a warrant and because they had failed to tell the defendant that they were going to impound his vehicle. The trial court granted defendant's motion, and the Florida Supreme Court sustained that ruling, stating:

> What we hold is that an officer, when arresting a present owner or possessor of a motor vehicle, must advise him or her that the vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment. An inventory search of a motor vehicle without such advice or consultation to a present owner or possessor upon arrest results in an unreasonable search under the United States and Florida constitutions and must be excluded under the Florida constitutional exclusionary rule.

*Id.* at 1314.

The Court in *Miller* cited, among others, the case of *State* v. *Slockbower,* 79 N.J. 1, 397 A.2d 1050 (1979). The

court in *Slockbower* recognized that since *Opperman* was decided, a substantial and growing minority of jurisdictions have insisted upon a factual showing of substantial police need, in the light of the constitutional regard for the privacy interests of automobile drivers, before approving the impoundment of a motor vehicle. In *Slockbower*, the defendant was arrested by Jersey City police officers for driving a motor vehicle while on the revoked list. The car was searched at once, and a .22 caliber pen gun and a box of ammunition were found in the closed but unlocked glove compartment.

The New Jersey Supreme Court held that the police's impoundment of defendant's car was illegal and in doing so, stated:

> It has been persuasively stated in a number of cases, in seeking a rationale that would duly balance the right of privacy against legitimate police safe-keeping functions, that if the circumstances, that bring a vehicle properly to the attention of the police are such that its driver, even though arrested, is able to make his own arrangements for its custody, or if the vehicle can be conveniently parked and locked without constituting an obstruction of traffic or other public danger, the police should permit that action to be taken rather than impound it against the will of the driver and thereafter search it routinely.

*Id.* at 1053-54.

Until now, our State appellate courts have not been confronted with an inventory search issue like that posed in *Miller* and *Slockbower*. However, the United States Court of Appeals, Eighth Circuit, has considered such an issue in *United States* v. *Wilson*, 636 F.2d 1161 (8th Cir. 1980). In *Wilson*, the defendant's car was stopped, and he was placed under arrest for various traffic infractions. The officer decided to take the defendant, a nonresident, to the police station so that he could post an appearance bond. The officer testified he believed the defendant was incapable of driving, so the officer ordered a tow truck to remove

defendant's car. Before the car was towed, the officer helped conduct a routine inventory search of the interior and trunk of the car. The officers found a sock containing shotgun shells under the front seat and two pistols, a sawed-off shotgun, two nylon stocking masks, two pairs of overalls, three pairs of work gloves and one pair of bolt cutters in the trunk. The trial court admitted these items into evidence, but the Court of Appeals held the search illegal, stating:

> The particular facts of this case make the search of Wilson's automobile trunk especially unreasonable. In *Opperman,* the Court noted that the car's owner "was not present to make other arrangements for the safekeeping of his belongings" and that the "inventory itself was prompted by the presence in plain view of a number of valuables inside the car." *United States* v. *Opperman, supra,* 428 U.S. at 375-76, 96 S. Ct. at 3100. Here, by contrast, the police offered no special justification for the search and Wilson was present during the search and capable of making other arrangements to safeguard his property. The police could have protected their interests as well as Wilson's without intruding into the privacy of the automobile trunk. The police, for example, could have asked for Wilson's consent to search the car, or, in the alternative, requested that Wilson arrange to remove the car himself or to relieve police from liability or claims. In addition, the police could have inventoried the locked trunk as a single unit. As this court has suggested in an analogous context, unit inventories might better serve the interests of the Government by minimizing "the possibility of loss and the possibility of false claims against police by the owner." *United States* v. *Bloomfield, supra,* 584 F.2d at 1202. As long as the police could show the trunk was never open while in their custody, the owner would have no claim involving property in the trunk. Finally, this search was unnecessary because the police intended to retain control of Wilson's vehicle for only a short period of time until Wilson could post an appearance bond.

The facts here are similar to those in *Wilson*. Appellant, a nonresident, was arrested on a charge which had nothing to do with whether there may have been contraband in his vehicle. In sum, the police had no reason to suspect that contraband was in the car and, therefore, no reason to conduct an investigatory search. The officer in *Wilson* did not believe the defendant should drive his vehicle, so the officer called a towing service. Here, the officers claimed appellant was inebriated; however, this observation was not made until after they had asked appellant if he wanted them to call a wrecker to extract his car from the mud. At trial, one of the officers testified that they later decided not to charge appellant with drinking because at the time the police department's breathalyzer was "broke down." Regardless of what happened to the initial charge against appellant, the evidence is clear that, before his arrest, appellant intelligently discussed with the officers alternate ways to remove his car and also communicated why he had no tags on the vehicle. He requested that the officers call a wrecker, which had arrived at the time appellant was arrested. Because appellant directed that a wrecker be called, if he had been given the opportunity, he may well have arranged for his car to be towed before he was taken to jail. In the alternative, the officers could have asked appellant to consent to their searching the car or to relieve them from liability for any claims.

Under the particular facts here, I am convinced that appellant's car was impounded unlawfully. I am not unmindful of the State's contention that certain items in plain view dictated an inventory search. Although it argues that cassettes, beer and whiskey were discovered in plain view inside the car, there is nothing in the record which supports that conclusion. The evidence shows only that these items were in the car — the number of items and their location were not mentioned. Even if the officers saw valuables in the car, they had no excuse to impound and search the entire vehicle when the appellant was present and able to decide what to do with his car. Because the car's impoundment was unlawful, the officers' subsequent inventory search was necessarily illegal.

To avoid any misunderstanding, I reiterate that this is not a case in which there was any probable cause to search or in which the search was related to the arrest. Nor does this case involve the lawful seizure of items under the plain view doctrine as that doctrine is defined in *Enzor* v. *State,* 262 Ark. 545, 559 S.W.2d 148 (1977).

I also wish to make it clear that I would not adopt the rule in *Miller* v. *State, supra,* which I read to mean that in *every case* an officer, when arresting a present owner or possessor of a vehicle, must advise him or her that the vehicle will be impounded unless the owner or possessor can provide a reasonable alternative. However, I do believe that when no special justification exists for a search and the vehicle owner is capable of making other arrangements to safeguard his property, as in the instant case and in *United States* v. *Wilson, supra,* the owner must be consulted before an inventory search, either to gain his consent to the search or to afford him an opportunity to provide an alternative to the vehicle's impoundment.[1]

In conclusion, I find significance in the fact that the majority gives only lip service to the *Wilson* case, stating summarily that the circumstances there differ from those at bar. As noted earlier, the officers did say that the appellant was intoxicated, but there is no other evidence to support such an allegation. To the contrary, the appellant intelligently conversed with officers concerning his predicament, and the officers never found it necessary to charge him with an intoxication violation. Inventory searches can easily be used as an insidious device to avoid the necessity of showing probable cause, and the indiscriminate use of such searches should not be countenanced by our courts. I believe this Court is doing just that in affirming this case. I would reverse and remand for a new trial.

---

[1]For other citations to this effect, see 7 Search & Seizure L. Rep. 42 (July, 1980).