Larry D. HENDERSON *v.* STATE of Arkansas

CA CR 85-116                                    699 S.W.2d 419

Court of Appeals of Arkansas
En Banc
Opinion delivered November 27, 1985

*Dale Varner*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Judge. Appellant appeals his conviction for possession of a firearm by a convicted felon, for which he was sentenced to a three-year term in the Arkansas Department of Correction. He contends that the trial court erred in denying his motion to suppress the evidence, claiming that the warrantless search of his briefcase was both unreasonable and beyond the scope of the inventory procedure.

On the afternoon of July 4, 1984, a park ranger saw appellant in his vehicle parked on the side of a road in the park's campground sewage disposal area. Appellant appeared to be passed out, and his vehicle's engine was running. The ranger called the sheriff's office, and a deputy sheriff arrived to investigate. The officer awoke appellant and ran a check on his vehicle and driver's licenses. He then gave appellant a field sobriety test, which he failed. Appellant then was arrested for being in actual control of a vehicle while intoxicated.

The deputy sheriff locked the car and asked the park ranger to stay with it while the deputy transported appellant to the sheriff's office. Pursuant to sheriff department policy, the officer returned to inventory the car before impounding it. He testified that he had to remove the car because it was in an area where campers disposed of the contents of their septic tanks.

The officer found an unlocked, unlatched, closed briefcase in the middle of the back seat. He flipped open the briefcase and found a Model 13 Smith and Wesson .357 pistol, two fully loaded speed loaders, and a bag of marijuana.[1] In its order overruling

---

[1] The officer found other items in the car and its trunk, but neither the relevance of those items nor the legality of their seizure is argued in this appeal.

appellant's motion to suppress, the trial court, citing *Colyer* v. *State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983), found that the search of the unlocked briefcase, in plain view of anyone entering the car, was no more than an inventorying of the vehicle, in keeping with the sheriff office's policy.

■ Citing *Robbins* v. *California*, 453 U.S. 420 (1981) and *Arkansas* v. *Sanders*, 442 U.S. 753 (1979), appellant contends on appeal that the warrantless search of his briefcase was unreasonable because of the expectation of privacy one has in containers such as briefcases.[2] However, in both *Robbins* and *Sanders*, investigatory, not inventory, searches were conducted, and the government was attempting to justify the searches of the containers under the vehicle exception to the warrant requirement. As the court stated in *United States* v. *Rabenberg*, 766 F.2d 355 (8th Cir. 1985), inventory searches do not rest upon findings of probable cause and, in light of their non-investigatory nature, do not implicate the warrant requirement.

■ In *South Dakota* v. *Opperman*, 428 U.S. 364 (1976), the Court noted inventory procedures developed in response to three distinct needs on the part of police departments: 1) the protection of the owner's property while it remains in police custody, 2) the protection of the police against claims or disputes over lost or stolen property, and 3) the protection of the police from potential danger. When conducted pursuant to standard procedure, and where aimed at securing or protecting the owner's property, the Court has consistently sustained inventory searches as exceptions to the search warrant requirement. *Illinois* v. *Lafayette*, 462 U.S. 640 (1983); *Opperman, supra.*

■ The *Lafayette* case involved an inventory search of a purse-type shoulder bag carried by the defendant when he was arrested for disturbing the peace. While the facts in *Lafayette* did not involve an automobile, the Court thoroughly discussed the principles associated with inventory searches as set forth in *Opperman,* and further considered whether the Fourth Amendment requires that such a search must be achieved in what the Court termed "a less intrusive manner." We note that Lafayette's

---

[2] In his argument, appellant concedes the inventory was initially warranted and valid.

search was not done immediately at the time and place of his arrest, but instead was· performed later at the police station. According to standard inventory procedure, an officer examined the contents of the defendant's bag and found ten amphetamine pills. The officer conceded the bag could have been placed and sealed in a container or locker for protection purposes. The state court held the inventory invalid, distinguishing *Opperman* on the basis that there is a greater privacy interest in a purse-type shoulder bag than in an automobile, and that the state's legitimate interests could have been met in a less intrusive manner, by sealing the bag within a plastic bag or box and placing it in a locker. The Supreme Court disagreed, and upheld the inventory as reasonable, stating the reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means. The Court further concluded:

> Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.

*Lafayette*, 462 U.S. at 648, 103 S.Ct. at 2611, 77 L.Ed. 2d at 72.

The Eighth Circuit Court of Appeals has had a series of inventory cases, the most recent of which was *Rabenberg, supra.* There, the appellants contended the officer's opening of a suitcase, and two gift-wrapped packages contained therein, exceeded the legitimate scope of an inventory search, and that the police department's policy requiring inventory searches merely was used by police as a pretext for an improper investigatory search.[3] The court upheld the inventory, finding that it was necessary for

---

[3] Appellants' suitcase was mistakenly picked up at the airport by a young boy who took it home where he and his uncle opened it, and found a loaded pistol and two gift-wrapped packages. The uncle called the police, and an officer later inspected one of the packages, which was partially opened, discovering what he suspected to be narcotics. The officer replaced the package in the suitcase and took the case to the police station where its contents were thoroughly inventoried. The packages were then rewrapped, replaced in the suitcase, and the suitcase was returned to the airport. Appellants subsequently picked it up and were arrested.

the officer to open the package so that he might protect all persons concerned from claims of theft and from dangerous instrumentalities. The court said:

> [E]ven though an inventorying policy might not always justify opening of a sealed package, *see, United States* v. *Bloomfield*, 594 F.2d 1200 (8th Cir. 1979), we cannot say that this search was unreasonable, given the peculiar circumstances.

*Rabenberg*, 766 F.2d at 357.

The *Bloomfield* case, cited in *Rabenberg*, involved an inventory search which the Eighth Circuit held invalid. Bloomfield was found unconscious in his car which was blocking traffic. He was taken to the hospital, and his automobile was inventoried by the police and later towed from the public highway. In inventorying, the officers opened a knapsack which was zipper-closed and tied with string. Inside, they found 10,360 dosage units of lysergic acid diethylamide (LSD), 23 grams of phencyclidine (PCP) and $1,300.00 cash. The court, limiting its holding to the facts before it, concluded the knapsack should have been inventoried as a unit because it was sealed tightly and there was no danger of anything slipping out. In so holding, the court recognized that there was no reason to believe the knapsack posed any danger to the police, and that inventorying the knapsack as a unit both protected Bloomfield's property, and, at the same time, protected the police against claims or disputes over lost or stolen property. The court added, in important part, that if a container which is to be inventoried is not closed securely so that the articles within could possibly fall out, it may be wiser to itemize the articles. *See United States* v. *Neumann*, 585 F.2d 355 (8th Cir. 1978) (The court upheld an inventory search of a box with a lid which, when removed by the officer, revealed demerol pills); *see also United States* v. *Laing*, 708 F.2d 1568 (11th Cir.), *cert. denied*, 464 U.S. 896 (1983) (The court sustained inventory search of defendant's automobile's trunk and unsecured Yahtzee gamebox which contained methaqualone tablets); *Hamby* v. *Commonwealth*, 222 Va. 257, 279 S.E.2d 163 (1981) (The court upheld as reasonable the opening of a zippered-closed, but unlocked, briefcase found in a car during an inventory search).

Our Court's decision in *Colyer, supra*, appears to be consis-

tent with the foregoing authority. In *Colyer*, the validity of the initial intrusion or inventory itself was in issue, but the Court also held its scope was reasonable as well. Among other things, the officer inspected a paper bag found in the defendant's vehicle, and discovered it contained plastic bags of marijuana. This Court rejected Colyer's contention that the officer merely should have stapled the paper bag for safekeeping and, instead, concluded that the officer—in keeping with his duty to safeguard the bag's contents—was not unreasonable in taking action to inventory its contents.

■ Under the rationale contained in each of the decisions considered and discussed above, we believe the inventory search—under the facts before us—is constitutionally authorized. Here, the appellant's briefcase was both unlocked and unlatched. We hold the employing of a less intrusive means of inventorying the unlatched briefcase was unnecessary, and that the opening of it was designed not only to safeguard appellant's property but also to protect the police officer against disputes or claims over lost or stolen property. Therefore, we affirm.

Affirmed.

COOPER, J., concurs.

JAMES R. COOPER, Judge, concurring. I agree with the majority opinion that the contents of the briefcase, since it was unlatched and unlocked, were properly inventoried, as "[i]f a container which is to be inventoried is not securely closed so that the articles within could possibly fall out, it may be wiser for the police to itemize the articles." *United States* v. *Bloomfield*, 594 F.2d 1200, 1203 (8th Cir. 1978); *See also United States* v. *Neumann*, 585 F.2d 355 (8th Cir. 1978). Inventorying articles in a closed but unlatched and unlocked, and therefore not "securely closed", briefcase thus protects the police against later unwarranted allegations of theft or loss, a legitimate reason for the taking of an inventory. *South Dakota* v. *Opperman*, 428 U.S. 364 (1976).

While I concur in the result reached by the majority on the particular facts of this case, I feel compelled to quarrel with the use of the word search in conjunction with the term "inventory" which is found in many of the cases discussing inventory issues. A

search is defined as:

> [a]n examination of a man's house or other buildings or premises, or of his vehicle, aircraft, etc., with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged. [citation omitted.] A prying into hidden places for that which is concealed and it is not a search for that which is open to view. Probing or exploration for something that is concealed or hidden from searcher; an invasion, a quest with some sort of force, either actual or constructive. [citation omitted.] Visual observation which infringes upon a person's reasonable expectation of privacy constitutes a "search" in the constitutional sense. [citation omitted.]

Black's Law Dictionary 1211 (5th ed. 1979). The constitutional safeguards of probable cause and search warrants, which apply to searches as described above, do not apply to inventories. *Opperman*, 428 U.S. at 370 n. 5. To use the two terms together implies that an investigation for evidence, under the guise of an "inventory search," is allowable without a search warrant. Any investigative examination of the contents of an automobile, whether or not they are in "securely closed" containers, requires a finding of probable cause and, absent exigent circumstances, a search warrant. *See id.*

Inventories are routine, *non-investigatory*, procedures which are allowed to (1) protect the owner's property, (2) protect the police against claims or disputes over lost or stolen property, or (3) protect the police from potential danger. *Id.* at 369. Combining the two terms leads to confusion over what is and is not permissible.