Eric **WOOTEN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 6–86–044–CR.

Court of Appeals of Texas, Texarkana.

July 21, 1987.

Errol E. Owen, Texarkana, for appellant.

John F. Miller, Jr., Dist. Atty., Texarkana, for appellee.

CORNELIUS, Chief Justice.

Eric Wooten appeals his conviction for delivery of cocaine. He contends that the district court should have dismissed the indictment for violation of his right to a speedy trial under Tex.Code Crim.Proc. Ann. art. 32A.02 (Vernon Supp.1987), and the Texas and United States Constitutions. He also complains of the admission of extraneous offenses, failure to prove a chain of custody, and improper argument by the prosecutor.

The State's evidence showed that on November 11, 1982, Wooten sold approximately five grams of cocaine to Department of Public Safety investigator Dwight Hardin. To protect Hardin's identity and allow him to continue the investigation of local drug trafficking, officers did not arrest Wooten at that time. In April of 1983, the on-going drug investigation culminated in the identification and arrest of approximately 100 suspects. Wooten was one of those sought to be arrested, but investigators were informed he had moved. He was indicted in August of 1983.

When the other suspects were apprehended, Hardin turned Wooten's file over to Officer Joseph Dillard. After numerous attempts to locate Wooten, his file was updated on January 17, 1985, at which time the officers were told that Wooten might be in California. Upon checking and

finding that a California driver's license had been issued to Wooten, his warrant information was entered into a national crime computer. A capias was issued on January 21, 1985, and Wooten was arrested two months later. The State first announced ready on April 30, 1985.

This action commenced for purposes of the Speedy Trial Act on August 11, 1983, which was the date of the indictment. Tex. Code Crim.Proc.Ann. art. 32A.02, § 2 (Vernon Supp.1987). The State's announcement of ready on April 30, 1985, was thus not within the 120 day time limit of the Act. The district court refused to grant Wooten's motion to dismiss under the Speedy Trial Act. He apparently found that the periods of Wooten's absence should not be counted against the State's readiness because his location was unknown, and either that he was attempting to avoid prosecution, or that the officers had been unable to locate him by reasonable diligence. *See* Tex.Code Crim.Proc.Ann. art. 32A.02, § 4 (Vernon Supp.1987). It is not necessary for us to rule on the propriety of these findings because the Speedy Trial Act, which requires dismissal of cases where the prosecution is not ready within the Act's time limits, has been declared void as in violation of the Texas Constitution. *Meshell v. State*, — S.W.2d —, No. 1339–85 (Tex.Crim.App., July 1, 1987). Thus, the district court's refusal to dismiss the indictment has resulted in a correct disposition, even if its findings under Article 32A.02, § 4 were incorrect.

■ Although it did not raise the unconstitutionality of the Speedy Trial Act, the State is nevertheless entitled to the benefit of the ruling since neither at the time of the trial nor at the perfection of this appeal had the remedy been recognized. *See Ex parte Chambers*, 688 S.W.2d 483 (Tex. Crim.App.1984); *Ex parte Casarez*, 508 S.W.2d 620 (Tex.Crim.App.1974).

Wooten also argues that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States and Texas Constitutions.

Whether an accused has been denied his constitutional rights to a speedy trial is determined by using a balancing test, giving consideration to the following nonexclusive factors: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Hull v. State*, 699 S.W.2d 220 (Tex.Crim.App. 1985).

■ Length of delay is measured from the time the accused is formally charged or arrested. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Wooten was indicted on August 11, 1983, and tried on April 15, 1986. This represents a delay of about two years and eight months. This delay is sufficient to invoke speedy trial considerations, though no specific length of delay automatically constitutes a violation of the right. *Hull v. State*, supra.

As to the reason for delay, the State urges that Wooten's location was unknown. The offense occurred in November of 1982. Wooten was sought by the authorities as early as April of 1983. Inquiries were made at his last known residence where it was found that he had moved. He was also sought in places he was known to frequent, but to no avail. At some point after April, investigators were told Wooten had fled or moved to California. Department of Public Safety Investigator Joseph Dillard testified that when he became responsible for the file in April of 1983, Wooten's location was unknown. Dillard stated that when he updated the file in January of 1985, he was informed that Wooten had fled to California. Dillard then ran a check on Wooten and found that a California driver's license in his name did exist. A capias was issued on January 21, 1985, and Wooten was arrested in Texas March 10, 1985. Although there is conflicting evidence, there is sufficient evidence to support the district court's presumed finding that the reason for delay in securing Wooten's presence for trial was the difficulty in locating him, rather than mere procrastination.

■ Prejudice from the delay is assessed by determining if, and to what ex-

tent, these three purposes of the speedy trial guarantee have been thwarted: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo*, supra. Of these three, Wooten urges the undermining of only one. He asserts that the delay prejudiced him because certain State witnesses were unable to recall specific events, and that he was unable to locate witnesses in his behalf. The record demonstrates that each of the State's witnesses possessed sufficient recall to adequately testify, and that no harm resulted in that respect from the delay. As to the missing witness, Wooten has failed to show how his defense could possibly have been aided by such testimony. Indeed, the missing witness was not even present at the time of the offense.

■ Examining the record in its entirety and then applying the *Barker v. Wingo* balancing test, we find there is sufficient evidence to support the district court's act in overruling Wooten's motion to dismiss. The trial judge heard the testimony of the witnesses and is in the best position to judge the credibility of the evidence.

Wooten also contends that a portion of the prosecutor's jury argument was outside the record and constituted reversible error. The prosecutor's remarks are best understood by looking at the context of the argument on both sides. Defense counsel first stated the following:

Stop and think, what happened to all these other people that were involved in all this. Nothing was done to Mark Meador. Nothing was done to anyone else. Is that justice? Going to be justice to put him down in the penitentiary among hardened criminals? That's not justice. Give him a chance. He won't disappoint you.

There were additional similar references in other portions of defense counsel's argument. The State replied in the following manner:

MR. ELLIOTT: One of the things that we are allowed to do as attorneys in a final argument is to answer the argument of the opposing counsel. That's allowed by law, and it is even allowed that where counsel goes outside the record, I'm allowed to follow him out there. Now he keeps asking what has happened to the other people in this deal? What's happened to the other people in this deal? I'll tell you what happened to the other people in this deal.

MR. OWEN: I object, Your Honor.

MR. ELLIOTT: We put every one of them in the penitentiary. That's what happened to them.

■ Ordinarily, a prosecutor may go outside the record to respond to an argument of defense counsel which is outside the record. *Reynolds v. State*, 505 S.W.2d 265 (Tex.Crim.App.1974). This case is unlike the cases of *Thornton v. State*, 542 S.W.2d 181 (Tex.Crim.App.1976), and *Bailey v. State*, 531 S.W.2d 628 (Tex.Crim.App. 1976), where the Court of Criminal Appeals held that a defense argument which asked the jury why certain *witnesses* were not called by the State to testify was not improper or outside of the record, and thus the State could not respond by unsworn testimony of the prosecutor giving reasons why the witnesses were not called. In our case, the defense counsel made the bald, unsworn statement to the jury that "[n]othing was done to anyone else" involved in the offense. Such an argument was improper, as it injected new and unsworn testimony in the case. The State's response was likewise improper as unsworn testimony. However, because it was invited and was in response to defense counsel's argument, the error was waived.

Additionally, it appears that defense counsel's objection to the argument was actually sustained by the court. The court commented as follows:

MR. OWEN: Objection, YOur (sic) Honor. There is no evidence on that point, and he knows that's not the truth.

THE COURT: Gentlemen, let's stay within the—we'll stay within the record; however, Mr. Owen, you opened the door to that one, but Mr. Elliott, I don't want to go back out in that thing, into that area, either, in your argument. Even

**578**

though counsel opened the door, let's stick with the facts in this particular case—the issues.

MR. OWEN: Your Honor, at this time we move for a mistrial.

THE COURT: Overruled.

Wooten did not request an instruction for the jury not to consider the remark, so no error is demonstrated in that regard. The motion for mistrial was properly denied under the record as a whole.

Error is alleged because of the introduction of certain extraneous offense evidence. After Wooten testified he was trapped into delivering the cocaine and that he did not intend to do so, the State asked him about a subsequent extraneous offense which occurred December 2, 1982. He denied that offense. The State then called a rebuttal witness who testified the offense did occur.

■ The rule in effect at the time of this trial was that when entrapment is interposed as a defense to a primary offense involving narcotics, extraneous offenses involving narcotics were admissible on the issue of intent. *Elam v. State*, 518 S.W.2d 367 (Tex.Crim.App.1975); *Kennard v. State*, 649 S.W.2d 752 (Tex.App.–Fort Worth 1983, pet. ref'd). The evidence would also be admissible under new Rule 404(b) of the Rules of Criminal Evidence.

■ The final issue challenges the State's proof of the cocaine's chain of custody. Wooten delivered approximately five grams of cocaine to Officer Hardin, and Hardin locked it in his car's trunk. The next day it was submitted to the Department of Public Safety lab in Garland. Lorna Beasley, the chemist at that lab, testified Hardin submitted a substance to the lab, that it was given a case number, and that it was then locked in a vault. She stated the substance was cocaine and that the substance Hardin submitted was the same substance she brought to court. Beasley also testified there was no room for error as to the chain of custody. Wooten has made no showing that the evidence had been tampered with or changed. Under these circumstances, the chain of custody was sufficient to establish identity.

*Mendoza v. State*, 552 S.W.2d 444 (Tex. Crim.App.1977).

For the reasons stated, the judgment is affirmed.