Lonnie Charles FOLLY *v.* STATE of Arkansas

CA CR 88-298 771 S.W.2d 306

Court of Appeals of Arkansas
En Banc
Opinion delivered May 31, 1989

*Priscilla Karen Pope*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Lonnie Charles Folly appeals from his conviction of the crime of possession of a controlled substance for which he was sentenced to a term of ten years in the Arkansas Department of Correction and fined $10,000.00. On appeal, he contends that the trial court erred in not suppressing evidence seized from his person and vehicle at the time he was arrested, and during an inventory of the contents of his vehicle after he had been taken into custody. He contends that the evidence was seized as a result of an illegal arrest. We conclude that the evidence was properly admitted and affirm.

Where the validity of a warrantless search is in issue, this court makes an independent determination, based on the totality of the circumstances, whether the evidence obtained by means of a warrantless arrest or search should be suppressed. The trial court's finding will not be set aside unless it is found to be clearly against the preponderance of the evidence. As the preponderance of the evidence turns heavily on the question of credibility, we defer to the superior position of the trial court in making the determination of which evidence is to be believed. *State* v. *Osborn*, 263 Ark. 554, 556 S.W.2d 139 (1978).

The record reflects that on the morning of January 13, 1988, Anna Ralston called Lieutenant Upton of the Springdale Police Department and reported that appellant had a weapon and had threatened to shoot her, and stated that she was afraid of him. She also told the officer that appellant was with her sister and that she was afraid her sister was being held against her will. Lieutenant Upton testified that he was familiar with appellant because he had been mentioned in several criminal investigations and that

appellant's file reflected that his driver's license had been suspended. Lieutenant Upton checked and confirmed that the license had not been reinstated. At the afternoon briefing, he informed the duty officers of the threats on Ms. Ralston's life, gave them a description of appellant's pickup truck, and requested the officers to be on the lookout for appellant, who might also be driving without a license.

Later that evening, Ms. Ralston called Lieutenant Upton from a convenience store and was very upset. When he and another officer arrived, Ms. Ralston informed them that she had seen appellant's car parked in front of her apartment and was afraid that he was waiting for her in order to carry out his threats. She also expressed fear for the safety of her sister, who was alone in the apartment. The officers then accompanied Ms. Ralston to her apartment and, though appellant was not there, they found her sister in a room with the door locked. The sister informed them that appellant had left in his vehicle en route to the Holiday Inn and that he was armed. She was asked if he had any narcotics, and she replied, "Little, if any." Lieutenant Upton then radioed all units to be on the lookout for appellant's vehicle and advised them that he was armed and possibly in possession of drugs.

Appellant's vehicle was located at the Holiday Inn parking lot by another officer, and, under Lieutenant Upton's direction, the officer stopped appellant. The officer testified that, because of the information that appellant was armed, he first searched appellant's outer garments for weapons. During a pat-down, he felt something "long and hard" in appellant's jacket pocket and pulled out a plastic bag containing contraband. The officer then placed appellant under arrest. When he resumed the search, the officer found a six-inch lock blade knife in the same pocket.

After appellant was taken into custody and transported to the police station, but prior to towing appellant's vehicle to police storage, two officers conducted an inventory of the contents of the vehicle. During the inventory, the officers opened a large, unlocked, metal tool box affixed to the bed of appellant's pickup truck in which they found an unlocked "suitcase, duffel-bag type carrier." Inside the bag they found a black leather pouch containing a plastic bag of contraband.

First, appellant contends the trial court erred in not

suppressing evidence seized during the stop and pat-down search. We cannot agree. It is clear that the officer had a sufficient basis for an investigatory stop. Rule 3.1 of the Arkansas Rules of Criminal Procedure permits a police officer to stop and detain any person that he reasonably suspects has committed or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or property, where it is reasonably necessary to obtain or verify the identification of the party or to determine the lawfulness of his conduct. Reasonable suspicion means the suspicion based on facts and circumstances which, in and of themselves, may not constitute probable cause to justify a warrantless arrest, but which give rise to a suspicion that is reasonable as opposed to imaginary or conjectural. Ark. R. Crim. P. 2.1. The justification for the investigative stop depends on whether the police have a particularized, specific, and articulable reason indicating the person or vehicle may be involved in criminal activity. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982); *Reeves* v. *State*, 20 Ark. App. 17, 722 S.W.2d 880 (1987). Based on the evidence presented, the trial court found that the officer had reason to suspect that appellant was driving without a license and had committed the crime of terroristic threatening. We agree that this justified the stop.

It is equally clear that the officer had sufficient basis for conducting the pat-down search of appellant's person. Arkansas Rule of Criminal Procedure 3.4 permits an officer making a stop to search the outer clothing of the person if he reasonably suspects the person is armed and presently dangerous. Here, the officer had every reason to suspect that appellant was armed; therefore, the pat-down search was reasonable.

Appellant argues, however, that the officer making the arrest did so merely as a pretext for searching for contraband. This argument is based on the fact that appellant had been under police investigation and on the statement by the arresting officer that he had been informed that appellant was "heavily armed and dangerous and in possession of illegal narcotics."

An arrest may not be used as a pretext to search for evidence of other crimes; where the search and not the arrest is the officer's true objective, the search is not a reasonable one within the meaning of the Constitution. *Richardson* v. *State*, 288 Ark.

407, 706 S.W.2d 363 (1986). Appellant argues that, had the officers desired to arrest him for terroristic threatening, they could have done so with a warrant, after Ms. Ralston's first call to Lieutenant Upton. He also argues that stopping him for a suspended driver's license was obviously pretextual as the officer did not immediately ask to see his driver's license. Appellant's contentions overlook the fact that a second complaint was made to the police immediately before the stop, and that officers had just been informed again, by Ms. Ralston's sister, that appellant was armed. Further, the officer making the stop stated that he had done so with the object of investigating the information of both violations of which he had knowledge, and denied that the object of the stop and arrest was to search. At the suppression hearing, the officer testified: "I *arrested* [appellant] for possession of methamphetamine. I *stopped* him for the suspended driver's license that Lieutenant Upton said . . . during roll call. . . . I stopped him to check him . . . and from what information I had been given [he] was threatening to do bodily harm to this unknown female. . . . He was supposed to be heavily armed." (Emphasis added.)

 Appellant also argues that the pat-down search by the officer was not confined to an intrusion reasonably designed to discover weapons and, therefore, all evidence obtained therefrom should be suppressed. We do not agree. The officer testified that that was the sole purpose for his search, and when he felt a hard object in the pocket he removed it and found it to be contraband. Although the rule limits the scope of the search, it does not limit what may be seized if discovered during the course of a permissible search. *Cf. Johnson* v. *State*, 21 Ark. App. 211, 730 S.W.2d 517 (1987); *Van Daley* v. *State*, 20 Ark. App. 127, 735 S.W.2d 574 (1987). From our review of the totality of the circumstances, we cannot conclude that the trial court's findings that the stop, frisk, and subsequent arrest of the appellant were valid are clearly against the preponderance of the evidence.

 Second, appellant contends the trial court erred in not suppressing evidence seized during the inventory of his vehicle following his arrest. We find no error. We do agree with appellant that the intrusion into the tool box and containers found within it could hardly be justified as a search incident to the arrest, pursuant to Ark. R. Crim. P. 12.1. As the officers had no

reasonable cause to believe that the tool box contained contraband, a warrantless search of its contents or the suitcase found within it would have been constitutionally infirm. Appellant relies on *Scisney* v. *State*, 270 Ark. 610, 605 S.W.2d 451 (1980), and *Arkansas* v. *Sanders*, 442 U.S. 753 (1979), which held that warrantless searches of trunks of vehicles, pursuant to a lawful arrest, are violative of one's fourth amendment rights, absent exigent circumstances. However, this case is clearly distinguishable from *Scisney* and *Sanders*. The courts now recognize the "inventory search" as a well-defined exception to the warrant requirement of the fourth amendment. *See Colorado* v. *Bertine*, 479 U.S. 367 (1987); *Illinois* v. *LaFayette*, 462 U.S. 640 (1983); *South Dakota* v. *Opperman*, 428 U.S. 364 (1976); *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986); *Reeves* v. *State*, 20 Ark App. 17, 722 S.W.2d 880 (1987); *Henderson* v. *State*, 16 Ark. App. 225, 699 S.W.2d 419 (1985); *Colyer* v. *State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983). This exception has been codified in Ark. R. Crim. P. 12.6(b), which states:

> A vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents.

In *South Dakota* v. *Opperman*, the United States Supreme Court declared that the policies behind the warrant requirement are not implicated in the inventory search nor is the related concept of probable cause. Chief Justice Burger stated:

> The standard of the probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures . . . The probable cause approach is unhelpful when analysis centers upon reasonableness of routine administrative caretaking functions, particularly when one claim is made that the protective procedures are a subterfuge for criminal investigations.

*Opperman*, 428 U.S. at 370 n. 5.

In *Colorado* v. *Bertine*, police officers stopped the appellant for driving while under the influence of alcohol. After the appellant had been taken into custody, and before the arrival of a tow truck to take his vehicle to an impoundment lot, the officer

inventoried the vehicle in accordance with local police procedure requiring a detailed inventory of impounded vehicles. He found a backpack directly behind the front seat and inside the pack he observed a nylon bag containing metal canisters. He opened the canisters and discovered contraband. The court opined that the inventory search procedure serves to protect an owner's property while it is in the custody of the police and to ensure against claims of lost, stolen, or vandalized properties. These interests, in light of diminished expectation of privacy of an automobile, were held to outweigh the individual's fourth amendment interests.

In *Bertine, Opperman,* and *Illinois* v. *LaFayette,* the United States Supreme Court emphasized the fact that the police were following standard procedures and that there was no real evidence that they acted in bad faith or for the purpose of investigation. The execution of an inventory pursuant to a standard procedure tends to ensure that the intrusion is limited to that which is necessary to carry out the prescribed caretaking function. *Opperman, supra.*

In the present case, the trial court found that the officers were following standard procedure prescribed by the Springdale Police Department. The officers testified that it was standard procedure for all vehicles which were taken into custody pursuant to an arrest or impounded to be routinely inventoried in order to protect the property and avoid liability.[1] The court found that there was nothing to indicate that appellant's vehicle was treated differently than any other vehicle under similar circumstances. The tool box was not locked, and, unless the officers inventoried all property in the vehicle, there was a likelihood that items might be lost or stolen. The court concluded that the inventory was made in good faith and pursuant to regulations of standard procedure, and was valid.

Appellant argues that the police should have permitted him to make other arrangements for the protection of his property, and, therefore, the inventory was not necessary. This argument was clearly rejected by the United States Supreme Court in *Bertine.* There, the Court held that, while giving an

---

[1] There was some evidence in the record that the procedure was in writing.

opportunity to make alternative arrangements may have been possible, "the real question is not what could have been achieved, but whether the fourth amendment requires such steps." *Bertine*, 479 U.S. at 374 (quoting *LaFayette*, 462 U.S. 640, 647). The Court opined that the reasonableness of a governmental activity does not necessarily or invariably turn on the existence of alternate or less intrusive means. *See also Cady* v. *Dombrowski*, 413 U.S. 433 (1973).

In *Bertine*, the Court also rejected appellant's argument that the container in which the contraband was found should have been inventoried as a unit because it was in police custody and a search warrant could have been obtained. Reaffirming its holdings in *Opperman* and *LaFayette*, the Court stated:

> When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers in the case of home, or between glove compartments, upholstered seats, trunks, wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Bertine*, 479 U.S. at 375.

Appellant also argues that the inventory was not justified because the vehicle was not abandoned in a place where it created a traffic hazard. He points out that the inventory allowed in *Henderson* v. *State*, 16 Ark. App. 225, 699 S.W.2d 419 (1985), followed the arrest of the intoxicated, sole occupant of a vehicle which was in such a position that it interfered with other persons' use of a state park facility. He also relies on *Colyer* v. *State*, 9 Ark. App. 1, 852 S.W.2d 645 (1983), where a similar situation occurred in which a car was stuck in the mud at a highway intersection and the intoxicated driver was taken from the vehicle. Appellant argues that, by contrast, the vehicle here was not creating a traffic hazard but was parked in a parking lot at a motel, and, therefore, a different result is warranted. We do not agree. The fact that a vehicle is legally parked does not necessarily negate the need to take the vehicle into protective custody. In *United States* v. *Staller*, 616 F.2d 1284 (5th Cir. 1980), where an arrest was made in the parking lot of a shopping mall, the court

held that the fact that the vehicle was parked and presented no apparent hazard to public safety was not decisive. In *Staller*, the court stated:

> Although [the] vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft. The likelihood of such harm would increase with every passing day. Under these circumstances taking custody of [the] car was a legitimate exercise of the arresting officer's community caretaking function. Once the officers took custody of the car, they were required by police department regulations to inventory its contents.

*Staller*, 616 F.2d at 1290 (footnote omitted).

Here, appellant's vehicle was to be left in a motel parking lot. The appellant was taken into custody on a serious charge, and the likelihood that the vehicle would be vandalized if not taken into protective custody certainly existed. In *Reeves* v. *State*, 20 Ark. App. 17, 722 S.W. 2d 800 (1987), this court upheld the inventory of a vehicle, parked in a motel parking lot, before it was towed to the police facility.

Nor do we find merit in appellant's final argument that the inventory was a mere pretext for a search for contraband. Where an inventory is otherwise permissible, its validity is not affected by a suspicion that contraband may be found. *United States* v. *Staller, supra; United States* v. *Prescott*, 599 F.2d 103 (5th Cir. 1979).

Rule 12.6(b) of the Arkansas Rules of Criminal Procedure provides that a vehicle retained in official custody for good cause may be searched at such times and to such extent as would be reasonably necessary for the safekeeping of the vehicle and its contents. The officers conducted this inventory in accordance with standard police practice. We cannot conclude that it was unreasonable for the police officers to take this vehicle into custody in the parking lot or that there was any requirement that it be searched only after being towed. In both *Bertine* and *Reeves*, the validity of the inventory was upheld where the vehicle was searched before it was towed from the point of arrest. The only

requirement is that the vehicle be taken into police custody before the inventory is conducted. We cannot conclude from the record here that the action of the police officers did not constitute the taking of the vehicle into custody prior to the inventory.

Affirmed.

COOPER and ROGERS, JJ., concur.