Willie James LONG *v.* STATE of Arkansas

CR 73-169                                       508 S.W. 2d 47

Opinion delivered April 22, 1974

418

*Butler and Hicky,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Richard Mattison,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Willie James Long, appellant herein, was convicted of possessing marijuana with intent to sell or transfer, and on trial by the jury was convicted, sentenced to five years imprisonment in the Department of Correction and fined the sum of $750.00. From the judgment so entered in accordance with this verdict, appellant brings this appeal. For reversal, three points are asserted, but since the first is dispositive of the case, there is no need to discuss the last two points. It is asserted that the trial court erred in overruling Long's motion to suppress evidence illegally obtained and in admitting the evidence seized by the police officers into the trial.

The proof reflects that Lt. Dave Parkman of the Forrest City Police Department, on Saturday morning, May 5, 1973, received information from an informant that marijuana was being concealed or possessed at the home of Willie James Long for the purpose of sale and that it was being sold at this residence. Parkman testified that on the previous night, he (together with an un-named officer or officers) had observed an automobile stop at the Long home, remain parked for a while, and when the automobile was later driven away, the officer arrested some occupants of the vehicle for possession of illegal firearms; some marijuana was also found by the side of the car that one of the occupants had thrown from the automobile; Parkman said he was informed that the marijuana came from the Long house. However, he did not know which occupant threw the marijuana out of the vehicle and no arrest was made on a charge of possessing marijuana. He stated that the officers were too busy Friday night to "follow up" on this matter, and the next morning, he got hold of the informant who had proven himself reliable in the past, and this informant advised that marijuana was being kept at

appellant's home and was being sold from the residence. Parkman then testified that he endeavored to locate Judge Wilkinson, the municipal judge, for the purpose of obtaining a search warrant, but was told by the judge's wife that he was out of town. He said there was no circuit judge in Forrest City, and to his knowledge, no justice of the peace who exercised judicial authority. The officer said that he then called the deputy prosecuting attorney and was advised by that official to proceed with the investigation, and if necessary, to make a search. Officer Parkman and Sgt. Carmichel of the Forrest City Police Department, about 11:30 A.M., went to the Long residence and knocked on the door, which was answered by appellant. Upon learning that the occupant who opened the door was Long, the officers identified themselves and Parkman said he was asked to "step in". They went inside and Parkman told appellant that he was there to search for marijuana, but had no search warrant since the city judge was out of town. "I believe I told him he would be taken to the station or would be arrested, I don't remember the words I used, but I advised Officer Carmichel to give him his rights." In response to a question by the deputy prosecuting attorney, the officer stated that he then considered Long to be under arrest. Appellant was told that the officers were there to search for marijuana, but Long objected to this being done without a search warrant; nonetheless, Parkman proceeded to search the residence, leaving Long in the front room with Officer Carmichel and two other men who were visitors in the Long home at the time. The officer stated that he searched four rooms of the house, the kitchen, the bathroom, the living room, and the bedroom. He said the two main searches were conducted in the bathroom and kitchen, and while he was conducting the search, there was a disturbance in the front part of the house by one of the visitors, and Parkman took this man out and placed him in the police car. He then returned and finished his search, finding an Avon powder box in the bathroom which contained a substance that appeared to be marijuana. Sgt. Carmichel corroborated the testimony of Parkman. A later analysis established the substance to be marijuana, and Long was then charged with the aforementioned offense. Prior to trial, a motion to suppress this evidence was presented in chambers to the court, and evidence taken, but the court overruled the motion and permitted the testimony and the exhibit to go into the record.

Unquestionably, the court erred in its ruling. Admittedly, the officers did not possess a search warrant; admittedly, there was objection to the search being conducted without a search warrant, such objection being made prior to the search. The only justification for this search argued by the State was that it was incidental to a lawful arrest. We need not discuss whether there was probable cause for the arrest, for this search was clearly illegal. In *Terry* v. *Ohio,* 392 U. S. 1, the United States Supreme Court emphasized that "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." In *Davis* v. *Mississippi,* 394 U.S. 721, a search undertaken by an officer in a "stop and frisk" case was sustained because it was held to be no more than a protective search for weapons, but in *Sibron* v. *New York,* 392 U.S. 40, the court held that a policeman's action in thrusting his hand into a suspect's pocket was unlawful and illegal, being neither motivated by, nor limited to the objective of protection; rather, the search had been made in order to find narcotics, which were found. In *Chimel* v. *California,* 395 U.S. 752 (1968), which is particularly pertinent to the case at hand, the court said:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"*There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.* [Our emphasis] The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

Here, there is no contention that the officers suspected Long of possessing a gun or other weapon, and of course, the search was not confined to the area in which Long (or even one of his guests  might have reached in order to grab a weapon or evidentiary items. It follows there was no justification for this search without a search warrant, and the court erred in not suppressing this evidence.

Reversed and dismissed.