UNITED STATES of America

v.

Harvey NELSON.

No. DR–80–CR–15.

United States District Court,
W. D. Texas,
Del Rio Division.

Nov. 7, 1980.

John E. Murphy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Rogelio Munoz, Uvalde, Tex., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

SUTTLE, Senior District Judge.

The defendant, Harvey Nelson, is charged in this case with being a felon in receipt and possession of a .45 caliber pistol that had moved in or affected commerce. 18 U.S.C. § 1202(a) Appendix (Supp.1980). On September 15–16, 1980, this court conducted an evidentiary hearing on Nelson's motion to suppress the .45 caliber automatic pistol that was seized from the defendant's van on July 2, 1980, and which is the subject of the instant indictment. Nelson challenges both the validity of the arrest warrant and the search of the van.

As detailed below, the court agrees with the government that the arrest warrant was properly issued. However, the government's attempt to justify the search of the van as an "inventory search" is not persuasive.[1] After assessing the evidence and the credibility of the witnesses, the court finds that the "inventory search" of the van was in fact a pretext for searching the van for suspected evidence without a warrant.

In support of its order granting the motion to suppress, the court makes the following findings of fact and conclusions of law. Any finding of fact deemed to be a conclusion of law is adopted as such, and, conversely, any conclusion of law deemed to be a finding of fact is adopted as such.

### FINDINGS OF FACT

1. On July 2, 1980, Deputy Marshal Gerringer appeared before Magistrate Wallace in Del Rio, Texas, and filed a complaint under oath charging the defendant, Harvey Nelson, as a felon unlawfully in possession of a .45 caliber automatic pistol that had moved in interstate commerce.

2. The complaint was based, in part, on the affidavit given earlier that evening by Humberto Berton. Berton affied that Nelson had come to Berton's residence the previous evening and had shown Berton a .45 automatic pistol that Nelson had. Berton's affidavit was submitted to the magistrate with Gerringer's complaint.

3. The complaint also stated that the firearm had moved in interstate commerce as no such firearm is manufactured in the State of Texas, and that the affiant was personally present when Nelson was convicted of a felony.

4. At the hearing on Nelson's motion to suppress, the court permitted the defendant to delve into the facts behind the affidavit supporting the complaint in an attempt to prove the falsehood of the affiant's statements.

(a) When Nelson was arrested in early 1980 on possession of marijuana charges, he made bond through Roger Cerney, with Amistad Bonding Co. of Del Rio, Texas, and Gilmore & Hayes with Alamo Bonding Co. Nelson could not pay the required 15% cash premium on the $35,000 bond (which amounted to $5,250); so he signed a deed to his home in Del Rio and assigned a purchase contract of Nelson's home in Fresno County, California, in favor of Alamo Bonding Company. Nelson later paid the Amistad Bonding Company $2,700. He also con-

---

1. There is no assertion or proof that the search in this case can be justified upon any other ground.

structed a bridge over an irrigation ditch on Cerney's property. Nelson was never paid for his labor, and subsequently filed a labor lien with the Val Verde County Clerk for $3,050.

(b) Cerney knew that Nelson was having an affair with the wife of Cerney's partner, Jack Tye.

(c) Cerney initiated the contact between the Humberto Bertons and Deputy Marshall Gerringer on July 2, 1980. Cerney also translated Humberto Berton's affidavit statement from Spanish to English, and notarized it.

(d) The gun that was found in Nelson's van had been purchased by Eddie Berton, who is both Humberto Berton's cousin *and* the father-in-law of Cerney's daughter. Eddie Berton claims that the gun, purchased in January of 1980, had been missing since February 1980, although he had not reported the missing gun to the authorities.

(e) On the Saturday preceding the Wednesday arrest, Mrs. Humberto Berton told Mrs. Nelson that she, Mrs. Berton, had gone to Cerney and that Nelson would soon be arrested.

(f) When called to the stand at the suppression hearing, both Mr. and Mrs. Humberto Berton exercised their Fifth Amendment rights.

5. At approximately 8:30 p.m., July 2, 1980, the magistrate issued a warrant for the arrest of the defendant, Harvey Nelson. The warrant was executed shortly after 9:00 p. m. that evening by Gerringer, accompanied by Roger Cerney, Agent Hall with the Texas Alcohol & Beverage Commission, and Deputy Sheriff Don Likens.

6. Nelson was apprehended in his van, which was parked in front of his wife's parents' house. Nelson was asleep when the law enforcement officers arrived to arrest him. Nelson and his wife had recently moved out of their home; he had been sleeping in the van for several nights while his wife, because of marital discord, slept in her parents' home. An extension cord ran from the in-laws house to a fan in the van.

7. After Nelson was awakened, arrested, and removed from the van, Agent Hall began to inventory the contents of the van. He patted a bulge in a pouch-like pocket on the back of the driver's seat; movement caused a rattling sound. Upon reaching into the pocket, Hall discovered a partially filled box of .45 caliber pistol ammunition.

8. A number of people, including Nelson's wife and members of her family, had gathered around the van. Gerringer was uncomfortable and decided to move the van, in order to continue the inventory under less public and better lighted conditions.

9. Gerringer contacted the police dispatcher, who sent the standby wrecker, driven by Juan Abrego III. Abrego towed the van to Abrego's service station. Meanwhile, Gerringer took Nelson to the local jail.

10. A short time later, Gerringer, Likens, and Hall resumed inventorying the van at Abrego's service station. Agent Hall was sitting in the driver's seat, and Gerringer was sitting on the floor in the back of the van making the written inventory list. Abrego was standing in the front doorway on the passenger's side.

11. When Abrego asked what Gerringer and Hall were looking for, Gerringer responded, "A gun." Abrego ventured, "I'll get it for you," and, making a guess, he reached up behind the dashboard and retrieved a .45 caliber pistol that had been resting on the electrical wiring. Abrego handed the gun to Hall, who passed it back to Gerringer to record in the inventory list.

12. The complete inventory of the van took over an hour.

13. About 800 pills were also found in the van. No criminal prosecutions on narcotics charges have resulted.

14. No search warrant for the van was ever sought or obtained.

15. The van was taken to the storage lot of the federal Drug Enforcement Agency. However, the next day, the DEA refused to accept the van. A day or two later, under the impression that he was responsible for the van and its contents, Abrego brought the van back to the service station storage area.

16. A week later, Mrs. Harvey Nelson was permitted to pick up the van after paying Abrego a considerable sum ($145.00). The court notes that Mrs. Nelson was present when Nelson was arrested and was as able to take custody of the van then as she was two weeks later when she retrieved the van from Abrego's service station.

## CONCLUSIONS OF LAW

1. The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. "The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674, 2680, 57 L.Ed.2d 667 (1978).

3. Before issuing the arrest warrant, the magistrate is to determine from a complaint or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Rules 3 and 4, Federal Rules of Criminal Procedure.

4. The magistrate "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complaint's mere conclusion that the person whose arrest is sought has committed a crime." *Giordenello v. United States*, 357 U.S. 480, 485, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503 (1958).

5. The complaint must provide a foundation for the magistrate's neutral judgment that resort to further criminal process is justified. "It must provide the affiant's answer to the magistrate's hypothetical question 'What makes you think that the defendant committed the offense charged?'" *Jaben v. United States*, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370, 14 L.Ed.2d 345 (1965). The magistrate should consider the credibility of the complainant as well as the source of the complainant's knowledge. *Id.*

6. Thus, a complaint is insufficient where it contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein, does not indicate any sources for the complainant's belief, and does not set forth any other sufficient basis upon which a finding of probable cause could be made. *Giordenello v. United States*, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958).

7. The complaint and accompanying affidavit in this case disclose the affiant's identity and the fact that the affiant personally observed the defendant in violation of the law. The court finds that the information provided to the magistrate was enough to enable him to "make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." *Jaben v. United States*, 381 U.S. 214, 224–225, 85 S.Ct. 1365, 1370–1371, 14 L.Ed.2d 345 (1965).

8. The defendant did not prove by a preponderance of the evidence that a false statement was included by the affiant either knowingly and intentionally, or with reckless disregard for the truth. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

9. Generally, a search of private property is unconstitutional unless it is conducted pursuant to a properly issued search warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). In a limited number of situations, however, warrantless searches have been upheld as "reasonable" under the Fourth Amendment. One recognized exception to the warrant requirement arises when the police, in the exercise of their "community care-

taking functions," *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), acquire temporary custody of a privately-owned automobile. In these circumstances the Supreme Court has held that a warrantless inventory search of the automobile made "pursuant to standard police procedures" and for the purpose of "securing or protecting the car and its contents" is a reasonable police intrusion which does not offend Fourth Amendment principles. *South Dakota v. Opperman*, 428 U.S. 364, 372 & 373, 96 S.Ct. 3092, 3098 & 3099, 49 L.Ed.2d 1000 (1976).

The *Opperman* court identified three distinct interests which justify the inventory search of an automobile: protection of the owner's property which may be stored in the vehicle; protection of the police from false claims of lost possessions; and protection of the police from potential danger. *United States v. Staller*, 616 F.2d 1284, 1289 (5th Cir. 1980), *cert. denied* , —— U.S. ——, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

■ 10. Although an otherwise reasonable inventory search is not invalidated simply by an officer's suspicion that contraband or other evidence may be found, an inventory search "must be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *United States v. Prescott*, 599 F.2d 103, 105–106 (5th Cir. 1979).

■ 11. Before the need for a legitimate inventory search can arise, the police must have the right to take custody of the vehicle. *United States v. Staller*, 616 F.2d at 1289.

■ 12. The circumstances of the defendant's arrest in the van in this case are unlike the circumstances in other cases in which police properly took a vehicle into custody. This defendant, Harvey Nelson, was not arrested in a moving vehicle with no other occupants or relatives to retain possession of the vehicle, as in *United States v. Wade*, 564 F.2d 676 (5th Cir. 1977);

*United States v. Prescott*, 599 F.2d 103, 104–105 (5th Cir. 1979); and *United States v. Boyd*, 436 F.2d 1203, 1205 (5th Cir. 1971). The defendant was not alone in a strange town with no one to take custody of the vehicle, as in *United States v. Gravitt*, 484 F.2d 375, 380 (5th Cir. 1973), and *United States v. Staller*, 616 F.2d at 1290. Taking the van into custody was not necessary to protect the vehicle or its contents from loss or damage, as it might if it were to be left sitting in a shopping mall parking lot, *United States v. Staller*, 616 F.2d at 1290, or a motel parking lot, *United States v. Gravitt*, 484 F.2d 375, 380 (5th Cir. 1973). Finally, the "inventory" of Nelson's van did not involve a minor intrusion as in *United States v. Prescott*, 599 F.2d 103, 105–106 (5th Cir. 1979). The court finds that in this case, the law enforcement officers had no right to take the van into custody.

■ 13. Furthermore, the "inventory" conducted by Gerringer and his associates was not limited to the inspection of common locations where it is reasonable to expect the owner or occupant to place items of personalty, and so was not reasonable in scope. *United States v. Edwards*, 577 F.2d 883, 894 (5th Cir. 1978) (en banc).

■ 14. After receiving the evidence and assessing the credibility of the witnesses in this case, the court is convinced that the search of the van in which Nelson was found sleeping was not a legitimate inventory search, but was merely a pretext for thoroughly searching the van for the gun or other evidence.

15. The new "good faith" exclusion annunciated in *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980) (en banc), is clearly not applicable here, as the officers in this case were not, in fact, acting in good faith and in the reasonable belief that their actions were authorized.

Consequently, the defendant's motion to suppress should be, and hereby is, granted.

Within 30 days of the date of this order, the government either shall file its notice of appeal and certification therein, in accordance with 18 U.S.C. § 3731, or shall inform

the court that it intends to dismiss the indictment against Harvey Nelson in this case.

So ordered.