Benny Aaron COOPER *v.* STATE of Arkansas

CR 88-72 763 S.W.2d 645

Supreme Court of Arkansas
Opinion delivered January 23, 1989

479

*James R. Marschewski*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellant Benny Cooper was charged with attempted capital murder, possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, possession of drug paraphernalia, and felon in possession of a firearm. Before trial, Cooper filed a motion to suppress evidence seized from his vehicle contending that his detention by the investigating officer was unlawful and that the warrantless search of the vehicle violated his fourth amendment rights. At a hearing on the motion, the trial court determined that the evidence was admissible. Cooper was subsequently convicted by a jury on all charges and sentenced as an habitual offender. Finding no error, we affirm.

At approximately 10:30 p.m. on April 7, 1987, Detective Clay Thomas of the Fort Smith Police Department noticed a 1969 Oldsmobile travelling northbound on Towson Avenue in Fort Smith bearing what appeared to be out-of-state handwritten paper car tags. Thomas could not determine the expiration date of the tags nor could he determine where they had been issued. Thomas further considered the presence of temporary tags suspect as the car was an older model vehicle. Thomas followed the car and at one point pulled along side the vehicle. The driver looked directly at Thomas and shortly thereafter made a sudden left-hand turn without giving a signal.

Thomas managed to intercept the Oldsmobile several streets

later at which time he turned on his blue lights and spot light and flashed his headlights in an effort to stop the vehicle. The driver of the Oldsmobile crossed several streets and then parked in a dark area on a side street. Detective Thomas placed his unit behind the car and ordered the driver to exit the vehicle. The driver produced an Oklahoma ticket (unsafe vehicle) in lieu of a driver's license and identified himself as Benny Cooper.

Thomas testified that he recognized Cooper's name in connection with several recent arrest reports indicating that Cooper was a local drug dealer with prior convictions who was often armed. Thomas also suspected at this time that a bulge in Cooper's left hip pocket indicated the presence of a small handgun. Thomas returned to his vehicle to check for outstanding warrants and told Cooper to remain at the rear of the Oldsmobile. The warrant check was negative but another officer advised Thomas over the radio that Cooper was a known drug dealer, might be carrying drugs, and would be armed. At this time, Thomas noticed that Cooper had reentered his vehicle.

Thomas again ordered Cooper to exit the Oldsmobile. As he approached Cooper he talked with him for a moment and then asked Cooper if he was carrying a gun. Cooper replied in the negative and raised his jacket as proof. Thomas, still wary of the bulge in Cooper's left hip pocket, knew that Cooper had been arrested only two weeks earlier and had been carrying a .38 caliber handgun in his left hip pocket. As a matter of caution, Thomas asked Cooper to place his hands on the car so that he could conduct a limited protective search or "pat down" of Cooper's person.

Thomas testified that Cooper spun around and away from him, removed a gun for his left hip pocket, then pulled the trigger. The gun apparently malfunctioned. Thomas threw his flashlight at Cooper and ducked behind the Oldsmobile. He testified that Cooper then reached over the top of the vehicle and again tried to shoot him. Thomas drew his weapon, at which point Cooper either dropped his gun or threw it at Thomas and fled on foot. Cooper was apprehended by other officers about an hour later. During that time, Cooper's handgun was recovered and Thomas conducted a search of the Oldsmobile to check its contents since he considered it abandoned and knew it would be impounded.

 In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling was clearly against the preponderance of the evidence. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988).

 The fourth amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." That protection extends to persons driving down the street. Generally, searches of such persons or their vehicles conducted without a warrant are considered unreasonable. However, it has been held that consistent with the fourth amendment the police may stop persons on the street or in their vehicles in the absence of either a warrant or probable cause under limited circumstances. *Terry* v. *Ohio*, 392 U.S. 1 (1968); *United States* v. *Hensley*, 469 U.S. 221 (1985). One of those limited circumstances involves investigatory stops such as the one presented by the facts in the case before us.

There is no serious argument as to the validity of the initial stop by Detective Thomas. The presence of the paper car tags and the fact that it was impossible to verify the state of issuance or the expiration date of the tags, combined with the age of the vehicle and the obviously evasive actions of the driver, gave Thomas sufficient cause to stop the vehicle. Rule 3.1 of the Arkansas Rules of Criminal Procedure in relevant part provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

In determining whether the officer's suspicion was reasonable, A.R.Cr.P. Rule 2.1 provides the following definition:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest,

but which give rise to more than a bare suspicion; that is, suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

■ Here, Detective Thomas clearly had specific, particularized, and articulable reasons warranting his stop of the Oldsmobile to determine whether, as provided in Rule 3.1, the vehicle had been stolen. *See Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285, *cert. denied*, 459 U.S. 882 (1982).

However, our inquiry does not end with a finding that the investigatory stop was proper. The issue now becomes whether Detective Thomas could justifiably conduct a limited search of Cooper's person and, ultimately, whether there was any legal justification for the subsequent warrantless search of the car.

In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the United States Supreme Court upheld the validity of an officer's investigatory "stop and frisk" because the officer feared that suspects he thought were about to engage in criminal activity were armed. The Court stated:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. *Id.* at 23.

A.R.Cr.P. Rule 3.4 reflects the considerations expressed in *Terry* and provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

■ Detective Thomas had observed a bulge in Cooper's left hip pocket which suggested the presence of a handgun. He also knew that Cooper was by reputation a drug dealer who was often armed, had prior convictions, and had only recently been arrested while carrying a handgun in his left hip pocket. When these facts are coupled with the warning received over the police radio that Cooper would probably be armed, and the fact that Cooper had reentered his vehicle contrary to directions from Thomas, it is obvious that Thomas was involved in a potentially dangerous situation. Under the circumstances, a limited search or "pat down" of Cooper's person as permitted under Rule 3.4 was clearly warranted. In sum, we find Cooper's argument that an unlawful seizure had taken place at this point which tainted the subsequent search of the vehicle to be completely unfounded.

■ We need now determine only the lawfulness of the search of the Oldsmobile from which evidence was seized which formed the basis for the drug related charges against Cooper. The attempt by Detective Thomas to conduct a limited protective search of Cooper's person was frustrated when Cooper spun away from the officer, pulled a gun, twice tried to shoot the officer, either threw his gun at the officer or dropped it, and then fled. In considering these circumstances and in denying Cooper's motion to suppress, the trial court ruled in part that Cooper had effectively abandoned his vehicle when he fled. Within the context of constitutional search and seizure analysis, we agree that upon fleeing the scene Cooper abandoned whatever expectation of privacy he might have had in the Oldsmobile or its contents.

The following language from *Thom* v. *State*, 248 Ark. 180, 450 S.W.2d 550 (1970), is particularly useful:

> We find no merit in appellant's contention that the trial court should have suppressed evidence obtained from the search of the automobile. . . . If appellant in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of

expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing burglar abandons his automobile to escape the clutches of the law? We can see no distinction and consequently hold that when property is abandoned officers in making a search thereof do not violate any rights or security of a citizen guaranteed under the Fourth Amendment.

While we recognize that some distinction may be drawn between the minimal expectation of privacy in an overcoat which has been discarded on a public street and automobiles which are regularly left parked on public streets without any expectation that they will be subject to official searches, we consider the abandonment theory set forth in *Thom* to be sound as it applies to cases involving suspects who, like Cooper, flee from the scene of a crime leaving behind an unlocked vehicle. This approach has been cited with approval in several jurisdictions. *See* 1 W. LaFave, Search and Seizure § 2.5(a) (1987). *See also* Annot., 40 A.L.R.4th 381, at §§ 10 and 11 (1985), and cases discussed therein.

■ At the hearing on the motion to suppress, Cooper gave an entirely different version of the events surrounding the gun and the confrontation with Detective Thomas. However, we have repeatedly held that any conflict in the testimony of the witnesses is for the trial court to resolve. *Smith* v. *State*, 296 Ark. 451, 757 S.W.2d 554 (1988).

In light of the foregoing, we cannot say that based upon the totality of the circumstances the denial of Cooper's motion to suppress was clearly against the preponderance of the evidence. Accordingly, it was not error to admit the items discovered in the vehicle.

Affirmed.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I agree with the result but would base the decision on the law, not the Rules of Criminal Procedure. The rules in question are substantive, not procedural. *See Kiefer* v. *State*, No. CR 88-49 (Ark. January 17, 1989) (Hickman, J., concurring).