Robert IZELL, Jr. *v.* STATE of Arkansas

CA CR 00-1415                                    58 S.W.3d 400

Court of Appeals of Arkansas
Division III
Opinion delivered October 31, 2001

*Naif Samuel Khoury*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Robert Izell, Jr., appeals from a conviction for possession of methamphetamine with intent to deliver following his conditional plea of nolo contendere to the offense. On appeal, Izell argues that the trial court erred in 1) denying his motion to suppress the evidence seized during an illegal search of his vehicle; and 2) denying his motion to suppress a statement he subsequently made about the evidence at the Sheriff's Office. We agree that the trial court erred in refusing to suppress the evidence, and reverse and remand.

Robert Izell, Jr., was arrested on January 17, 2000, by Deputy Brandon McCaslin and State Trooper Billy Joe Gatlin on a misdemeanor warrant for violation of a chancery court order prohibiting him from associating with his former girlfriend. Izell was at his parents' home in Midland, Arkansas, had parked his vehicle in the circular drive of the residence, and had been inside for some time when the officers arrived, knocked on the front door, and were allowed inside.

Deputy McCaslin advised Izell that he was placing him under arrest because he had broken his peace bond. Izell was then handcuffed, searched, and arrested. Both officers led Izell outside where Izell was taken toward his own vehicle, although McCaslin's vehicle was parked at the opposite end of the lot. McCaslin asked Izell if

there was anything in the vehicle that he needed to know about, and Izell answered, "No." Izell then repeatedly stated, "You can't search my vehicle." McCaslin responded, "Robert, I am going to anyway." Izell objected when McCaslin stuck his head and arms into the vehicle, claimed that he was planting something in the vehicle, and attempted to run away. Izell fell and was placed in McCaslin's vehicle, while both officers continued the search of the vehicle. McCaslin immediately found a packet of drugs under the front seat.

Izell was transported to the Sebastian County Sheriff's Office, where Captain William Hollenbeck completed a seizure report and interview of Izell. Hollenbeck was briefed by McCaslin about the arrest and was advised that McCaslin planned on "seizing a vehicle that was used in the offense." Hollenbeck verbally advised Izell of his *Miranda* rights. According to Hollenbeck, Izell observed that he was having difficulty weighing the methamphetamine, and began "making fun" of Hollenbeck, by telling him "you can't even turn grams into ounces." Hollenbeck then asked Izell how much the methamphetamine weighed, and Izell responded that it weighed four ounces. After Hollenbeck got the scale to work properly, the methamphetamine weighed 4.13 ounces. This is the "statement" that Izell sought to suppress.

The trial court denied Izell's motion to suppress the evidence; however, Izell's abstract does not contain a ruling on the motion to suppress his statement. Izell subsequently entered into a conditional plea agreement based on a plea of *nolo contendere* and was sentenced to six years' imprisonment with an additional ten years' suspended imposition of sentence.

■■ On appeal, Izell first argues that the trial court erred in denying his motion to suppress the evidence because it was found during an illegal search of his vehicle. When the appellate court reviews a trial court's denial of a motion to suppress evidence, it views the evidence in the light most favorable to the State, makes an independent determination based on the totality of the circumstances, and reverses only if the trial court's ruling was clearly against the preponderance of the evidence. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998). When the validity of a warrantless search is in issue, this court will make an independent determination, based on the totality of the circumstances, and determine whether the evidence obtained by means of a warrantless search should be suppressed. *Folly v. State*, 28 Ark. App. 98, 771 S.W.2d 306 (1989).

Izell claims that his arrest at his parent's home was a pretext to conduct an illegal, warrantless search of his vehicle that was lawfully parked outside in the circular driveway of the home. Izell contends that this case turns upon this court's interpretation of Ark. R. Crim. P. 12.4, which addresses the circumstances under which a vehicle may be searched incident to arrest, and states:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

In contrast, the State contends that Officer McCaslin's search was authorized pursuant to Ark. R. Crim. P. 12.6(b) because he inventoried the truck to prevent loss and protect himself pursuant to police procedure. Ark. R. Crim. P. 12.6(b) deals with custodial taking of property pursuant to arrest, otherwise referred to as an inventory search, and states:

> A vehicle which is impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times, and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents.

We find that Izell's arguments regarding the search of his vehicle have merit and hold that the search cannot be upheld pursuant to either Rule 12.4 or 12.6.

Izell was arrested at his parents' home for a misdemeanor violation of a chancery court order. Testimony established that Izell had been there approximately thirty to forty-five minutes before he was arrested, and that his vehicle was parked on a private lot in a circular driveway behind the home. Of utmost importance, Izell was not in the vehicle or its immediate vicinity at the time of the arrest. *See Chimel v. California*, 395 U.S. 752 (1969)(*discussing* area within immediate control).

■ As a general rule, searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment. *Fultz, supra.* This rule is subject to a few specifically established exceptions, and those who seek to prove an exception must demonstrate that the exigencies of the situation made that course imperative. *Id.* The burden is on the party claiming the exception, the State, to establish an exception to the warrant requirement and to show its need. *Id.*

In *Fultz, supra,* officers obtained a warrant for Fultz's arrest, went to his home, and arrested him somewhere in the vicinity of his carport kitchen door. His car was in "plain view" at the time of the arrest. The officers had knowledge that Fultz had used the car to transport drugs and had bought the car with drug money. After Fultz informed the officers that there might be a gun in the car, the officers seized and searched it pursuant to the department's vehicle inventory policy. The supreme court determined that, under these circumstances, the officers were entitled to perform an inventory search of the car after having legally seized it, pursuant to the plain-view exception.

*Fultz* is clearly distinguishable from the facts of Izell's case. Here, Izell's vehicle was not in plain view at the time of his arrest, but instead was parked outside while Izell was arrested inside the home. Additionally, there is no indication that the vehicle contained any objects that were evidence of a crime or that the officers had probable cause to believe the vehicle contained any evidence of a crime, fruit of a crime, or an instrumentality of a crime.

■ When Izell was arrested, he was neither in the vehicle nor in its immediate vicinity as required by Ark. R. Crim. P. 12.4. No evidence was presented by the State to indicate that the vehicle contained any objects which were connected with the offense for which the arrest was made, misdemeanor violation of a chancery court order, or to establish any connection between the misdemeanor offense and any reason to search the vehicle incident to that arrest. The officers admitted that Izell strongly objected to the search before it was conducted. An arrest may not be used as a pretext to search for evidence of other crimes. *Folly, supra; see also Long v. State,* 256 Ark. 417, 508 S.W.2d 47 (1974). Therefore, there was not a legal search of Izell's vehicle incident to his arrest.

■ We further consider the State's argument that Officer McCaslin's search of Izell's vehicle was authorized pursuant to police department policy and Ark. R. Crim. P. 12.6(b). Arkansas

appellate courts recognize the "inventory search" as a well-defined exception to the warrant requirement of the Fourth Amendment as codified in Ark. R. Crim. P. 12.6(b). *Folly, supra.* The State contends that Izell's attempt to flee provides "additional evidence of guilt" and cites *Chapman v. State,* 343 Ark. 643, 38 S.W.3d 305 (2001). The State also relies upon *Folly v. State, supra,* for the proposition that "the fact that a vehicle is legally parked does not necessarily negate the need to · take the vehicle into protective custody."

■ A police officer may conduct a warrantless inventory search of a vehicle that is being impounded to insure against claims of lost, stolen, or vandalized property and to guard the police from danger. *Thompson, supra.* The police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures. *Id.* However, we do not agree that *Folly v. State* provides authority for upholding the search of Izell's car in this instance. In *Folly,* after receiving phone calls indicating that the appellant had threatened a woman and her sister, the police approached him in his vehicle in a Holiday Inn parking lot, searched him for weapons, and found a plastic bag containing contraband and a six-inch lock-blade knife. After the appellant was taken into custody, but prior to having his vehicle towed, the police conducted an inventory search of the vehicle during which they found additional contraband.

This court upheld the denial of the motion to suppress, first noting that where the search and not the arrest is the officer's true objective, the search is not a reasonable one within the meaning of the Constitution. However, the court further observed that the fact that a vehicle is legally parked does not negate the need to take the vehicle into protective custody, and that factors such as hazard to public safety, possibility of vandalism, and the risk of theft are to be considered when determining whether protective custody is necessary. In upholding the inventory search of Folly's vehicle, the court noted that the police had followed standard procedures in impounding and inventorying the vehicle and were acting in good faith, where the vehicle was to be left in a motel parking lot, the appellant was taken into custody on a serious charge, and the likelihood existed that the vehicle would be vandalized if not taken into protective custody.

In *Thompson v. State, supra,* also clearly distinguishable from the present case, the appellant was stopped in his vehicle because the tail lights were not working, and was cited for not having a valid

driver's license or proof of insurance, but was not placed under arrest. The officer attempted to contact friends and family members of the appellant to find someone to drive his vehicle. Since no one could be located, the officer informed the appellant that his car would have to be impounded and its contents inventoried. In the course of the inventory, the officer found several plastic bags containing methamphetamine. The supreme court stated that it is well settled that police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to protect an owner's property, to insure against claims of loss, theft, or vandalism, and to guard the police from danger. The court held that since the appellant was unable to legally drive his car, the officer acted in good faith and in accordance with standard police procedures in impounding and taking an inventory of the appellant's vehicle.

In the present case, Izell was arrested, handcuffed, and patted down inside his parents' home. Officer McCaslin then took Izell out the back door and towards his truck instead of going straight to Officer McCaslin's vehicle. Although there was testimony that Izell had asked for his wallet from the truck, Trooper Gatlin testified that he had retrieved it from the seat of the vehicle through an open window and had given it to Izell's father before the search. Indeed, McCaslin stated that although the vehicle was off the road and no danger to anybody, he was going to tow it so "[he] wouldn't be responsible for it." Officer McCaslin testified that he inventoried Izell's truck pursuant to department policy and that his purpose in inventorying the truck was to prevent loss and protect himself. Officer McCaslin further stated that pursuant to policy "any time you make an arrest or you take a person out of their vehicle, that vehicle becomes my responsibility . . . [e]ven though it was parked where it was. . . ."

■ Although we agree that this court has stated that the fact that a vehicle is legally parked does not necessarily negate the need to take the vehicle into protective custody, we set forth factors that must be examined to determine the need for protective custody, such as the risk of theft, vandalism, or the hazards to public safety. None of the factors noted by this court in *Folly* are present in this case. Here, Izell was parked on private property behind his parents' home, and therefore, there was no hazard or risk to public safety or any apparent risk of vandalism. Izell was not arrested for a serious offense and had already been restrained and patted down, thus he posed no danger to the officers or to any evidence in the vehicle. Of particular import is the fact that Izell was not arrested in or within the immediate vicinity of his vehicle. Therefore, McCaslin's

testimony concerning the sheriff department's policy of inventorying vehicles when someone is arrested and removed from a vehicle is of no import since the circumstances necessary to trigger the policy were nonexistent.

■ There appears to be no legitimate basis for Officer McCaslin's decision to inventory and tow Izell's vehicle over his objections. No probable cause existed to assume the vehicle was related to any criminal activity, and the vehicle was, in fact, unrelated to the violation of the chancery court order. The vehicle was not likely to be in danger of tampering, theft, vandalism, or serve as a hazard to public safety. Izell's attempted "flight" after McCaslin announced his intent to search the vehicle has no relevance whatsoever to our analysis, but would instead pertain to a challenge based on sufficiency of the evidence. *See Chapman, supra.* Accordingly, viewing the evidence in a light most favorable to the State and making our own independent determination based on the totality of the circumstances, we conclude that the trial court's denial of Izell's motion to suppress the evidence must be reversed.

■ Izell also argues that the trial court erred in denying his motion to suppress the statement he made at the sheriff's office, as derivative evidence that is fruit of the poisonous tree. The State asserts that this argument is not preserved for appeal because Izell did not raise this argument to the trial court. Moreover, although Izell filed a separate motion to suppress the statement, and the trial court conducted a separate hearing on this motion several months after the earlier suppression hearing concerning the evidence, Izell's abstract contains neither an oral nor written ruling by the trial court on this motion. Nevertheless, the only statement at issue concerns the weight of the methamphetamine found in the illegal search of Izell's vehicle, evidence that we have held must be suppressed. The statement was obtained as a direct result of the illegal search, and must also be suppressed. *See Mitchell v. State,* 294 Ark. 264, 742 S.W.2d 895 (1988). In sum, there will be no evidence to testify about, with respect to its weight or anything else.

Reversed and remanded.

ROBBINS and BAKER, JJ., agree.