William Ray PITTMAN *v.* STATE of Arkansas

CA CR 06-1120                                    258 S.W.3d 408

Court of Appeals of Arkansas
Opinion delivered June 6, 2007

*Leah Lanford*, Christian Legal Service, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

DAVID M. GLOVER, Judge. Appellant, William Pittman, was tried by a jury and found guilty of the offenses of first-degree terroristic threatening, third-degree domestic battery, possession of a controlled substance, and possession of drug paraphernalia. For his sole point of appeal, appellant contends that the trial court erred in denying his motion to suppress the evidence that was obtained from his truck. We affirm.

Appellant was arrested on February 27, 2005, inside the apartment of his ex-wife, who had reported to police that she had been raped and held at knife-point in the apartment by appellant, that he had finally fallen asleep in her apartment, and that she wanted them to come get him. The police arrived, arrested appellant, and removed him from the premises. The criminal

information that was filed against appellant charged him with 1) first-degree terroristic threatening in that he allegedly threatened to kill his victim while pressing the blade of a knife into her right side; 2) first-degree false imprisonment in that he allegedly forcibly restrained her in her apartment and would not allow her to leave; 3) rape in that he allegedly engaged in sexual intercourse with her against her will by holding a knife at her throat and threatening to kill her; 4) third-degree domestic battery in that he allegedly repeatedly hit and kicked her, causing minor injuries; 5) possession of a controlled substance; and 6) possession of drug paraphernalia.

Appellant's vehicle was parked in front of the victim's apartment. His name was not on the lease of any apartment in the complex. The officers decided to impound appellant's vehicle because, as Sergeant Randall Gilbert testified at the suppression hearing, the nature of appellant's offenses against his ex-wife were violent, appellant did not reside at the apartment complex, and Sergeant Gilbert did not want appellant to have any excuse to return to the apartment complex. During the inventory of the truck, the officers discovered what was later confirmed to be a rock of crack cocaine and a crack pipe.

Rule 12.6(b) of the Arkansas Rules of Criminal Procedure provides:

> (b) A vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safe-keeping of the vehicle and its contents.

Appellant contends that there was no evidence in the instant case to support a finding that his vehicle needed safeguarding, that it posed a public-safety hazard, or that it contained any evidence related to the crimes with which he was charged. Consequently, he argues that it was not reasonably necessary for the officers to impound the vehicle and to conduct an inventory search for safekeeping of the contents, and that, therefore, the motion to suppress the evidence recovered from the vehicle should have been granted.

We do not find appellant's argument convincing. Rather, we find the rationale of *Folly v. State*, 28 Ark. App. 98, 771 S.W.2d 306 (1989) persuasive. In *Folly*, the appellant argued that the inventory search, which was conducted on a motel parking lot,

was not justified because his vehicle was not abandoned in a place where it created a traffic hazard. We explained that the fact that a vehicle is legally parked does not necessarily negate the need to take the vehicle into protective custody. We quoted with approval from a Fifth Circuit Court of Appeals case, *United States v. Staller*, 616 F.2d 1284 (5th Cir. 1980), which explained that even though a vehicle was lawfully parked and presented no apparent hazard to public safety, cars parked overnight in a mall parking lot run an appreciable risk of vandalism or theft — a fact known to the officers in that case. Accordingly, the court determined that under those circumstances, taking custody of the car was a legitimate exercise of what the court termed the officer's "community caretaking function."

Here, the trial court determined that Sergeant Gilbert's explanation for his decision to impound appellant's vehicle was reasonable, and we agree. The violent nature of appellant's attack on his ex-wife justified Gilbert's desire to eliminate any justifiable reason for appellant to return to his ex-wife's apartment complex. There was no indication that Gilbert's action was taken in bad faith. The unrefuted testimony of Sergeant Gilbert was that it was taken in accordance with standard police procedures. Consequently, we hold that Gilbert's explanation represented "other good cause" under Rule 12.6(b) of the Arkansas Rules of Criminal Procedure, that his action constituted an exercise of the officer's community caretaking function, and therefore that the trial court did not err in refusing to suppress the evidence obtained from appellant's truck.

MARSHALL, VAUGHT, and HEFFLEY, JJ., agree.

BAKER and MILLER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I disagree with the majority's conclusion that the "other good cause" provision included in Rule 12.6(b) of the Arkansas Rules of Criminal Procedure creates a constitutionally permissible good-faith exception to the requirement that a warrant be obtained prior to a government seizure of a citizen's property. The police officer in this case stated that he seized appellant's vehicle because he thought that it was best for the victim to remove any excuse for appellant to return to the apartment complex where the victim resided. Specifically, the officer testified:

> Due to the violence of the crime that he was arrested for, I felt that to remove his vehicle would be best for the victim, left him no reason to go back to that complex, and his name is on no lease of any apartment at that complex.

I do not doubt the officer's sincerity; however, whether the officer acted in good faith in seizing the vehicle is not the issue in this case. The issue is whether the officer's seizure of the vehicle because he "felt . . . [it] would be best for the victim" was a legitimate exercise of the officer's authority under Rule 12.6(b) of the Arkansas Rules of Criminal Procedure.

The problem lies in the government's seizure of appellant's truck rather than the subsequent inventory search. The majority's reliance upon Rule 12.6(b) for affirmance fails for two reasons. First, as the majority acknowledges, the vehicle was not impounded in consequence of an arrest. Second, the alternative to impoundment upon arrest provides that a vehicle "retained in official custody for other good cause" may be searched. It is clear under these facts that appellant's truck was not in official custody until it was seized and the seizure did not occur as a consequence of appellant's arrest. Appellant had driven his truck to the complex and left it in the parking lot the previous day. Appellant was arrested in the victim's apartment and transported in police custody from the premises. Accordingly, no action on behalf of law enforcement placed the truck in the apartment's parking lot, and the police incurred no corresponding obligation to safeguard the vehicle. The majority is mistaken when it reasons that the seizure of the truck "to eliminate any justifiable reason for appellant to return to his ex-wife's apartment complex . . . represented 'other good cause' under Rule 12.6(b)" and "that his action constituted an exercise of the officer's community caretaking function." Until the department seized the vehicle, after appellant's removal from the premises, the truck was not in police custody; therefore, it could not be *retained* in official custody for other good cause. The majority substitutes the word "taken" for "retained." That substitution changes the meaning of the rule.

Furthermore, the majority's error in substituting the concept of retention with a taking is compounded by the majority's misapplication of the "other good cause" provision. The majority accepts that the reason for the officer's impounding the vehicle was because he "did not want appellant to have any excuse to return to the apartment complex." It may be admirable, if naive, for a law

enforcement officer to believe that removing a conceivable excuse for an accused to return to the vicinity of the victim's residence will thwart future harm. However, to excuse the seizure of a vehicle by finding that law enforcement may seize property without a warrant for some imagined contingent is contrary to fundamental due process. The majority condones the seizure of a vehicle where the owner of the vehicle was arrested in an apartment after leaving the vehicle legally parked the day before, where appellant was nowhere near the vehicle when arrested, where he gave no consent to have the vehicle searched, where there was no nexus between the vehicle and the criminal conduct upon which the arrest was based or any other crime, where there was no objective basis to believe that the vehicle posed a threat to the public or to the officers, and where there was no reason to believe that the search was necessary to safeguard the vehicle or its contents. See Knowles v. Iowa, 525 U.S. 113 (1998); Ark. R. Crim. P. 12.1; Ark. R. Crim. P. 12.4; Ark. R. Crim. P. 12.6.

The majority's attempted analogy to Folly v. State, 28 Ark. App. 98, 771 S.W.2d 306 (1989) is misplaced because the vehicle in Folly was impounded from a motel parking lot after officers lawfully stopped and arrested the driver. The action of the law enforcement officers caused the vehicle to be parked in the motel parking lot; therefore, it was reasonable for the officers to assume responsibility for safeguarding the vehicle and its contents. In contrast, the majority in this case acknowledges that the seizure of appellant's truck was not incident to the arrest.

Neither does the majority's reliance on United States v. Staller, 616 F.2d 1284 (5th Cir. 1980), support the seizure. The seizure of the vehicle in Staller was made after law enforcement made an arrest in the parking lot of a shopping mall resulting in the abandonment of the vehicle driven by the individual taken into custody. The court reasoned:

> In this case the automobile's owner, who was from out of state, had just been arrested for passing counterfeit money and taken to jail. The owner had no friend or relative available to take care of the car, as his only travelling companion had also been arrested. The officers who made the arrest had every reason to expect that appellants would be separated from their vehicle for an extended period of time. Although Saunder's vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a car parked overnight in a mall parking lot runs an

appreciable risk of vandalism or theft. The likelihood of such harm would increase with every passing day. Under these circumstances taking custody of Saunder's car was a legitimate exercise of the arresting officer's community caretaking function. Once the officers took custody of the car, they were required by police department regulations to inventory its contents.

*Staller*, 616 F.2d at 1289-90 (1980) (footnotes omitted).

"Before the need for a legitimate inventory search can arise the police must have the right to take custody of the vehicle." *United States v. Nelson*, 511 F. Supp. 77, 81 (W.D. Tex. 1980) (citing *Staller*, 616 F.2d at 1289); *see also Mounts v. State*, 48 Ark. App. 1, 888 S.W.2d 321 (1994) (holding that where officers lacked probable cause to arrest for driving under a suspended or revoked driver's license officers were precluded from inventorying impounded vehicle in which 130 pounds of cocaine were discovered). As discussed above, this vehicle was not impounded in consequence of an arrest. Even if it had been, there was no testimony that would establish that the vehicle or its contents needed safeguarding due to the location or manner in which it was parked. *Cf. Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000) (affirming a search incident to arrest for hot-check charges where the defendant was arrested at a grocery store). Thus, the fact that the vehicle was located on an apartment complex parking lot did not justify the seizure of the vehicle in this case.

The majority is further misapplying the safekeeping functions of law enforcement regarding an officer's duty and responsibility to a citizen taken into custody from his vehicle. Police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine*, 479 U.S. 367 (1987); *see also Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997). The cases relied upon by the majority are consistent with these caretaking duties because the vehicle in each case came into possession of the authorities through some legitimate police function. However, none of our previous applications of this safekeeping function apply in this case. The majority makes no attempt to validate the officer's seizure of the vehicle by relating the taking to any of our previously recognized justifications. A review of the cases reveals that police were justified in *retaining* custody of the vehicle that came

into police possession by virtue of the driver being taken into police custody resulting in the vehicle being stopped or abandoned in a public place. *See, e.g., Asher v. State,* 303 Ark. 202, 795 S.W.2d 350 (1990) (affirming inventory search of vehicle where driver was removed from the accident scene in semi-conscious state); *Cooper v. State,* 297 Ark. 478, 763 S.W.2d 645 (1989) (affirming inventory search of vehicle where narcotics suspect fled scene after attempting to shoot officer); *Colyer v. State,* 9 Ark. App. 1, 652 S.W.2d 645 (1983) (affirming inventory search where the driver, a transient, was arrested on outstanding warrants and for being drunk on the highway, and where the vehicle lacked a license and was stuck in mud).

Other times, the vehicles came into police custody through the safekeeping function of reclaiming stolen property, *see Lipovich v. State,* 265 Ark. 55, 576 S.W.2d 720 (1979) (affirming inventory search where the vehicle, reported as stolen, was found abandoned and was a hazard on a public highway), or through investigation of traffic accidents. *Bratton v. State,* 77 Ark. App. 174, 72 S.W.3d 522 (2002) (affirming inventory search of a vehicle that had been involved in accident and left disabled on road after the defendant had been transported to hospital).

Inventory searches have also been affirmed where the search of the vehicle is related to the alleged criminal activity. *Chambers v. Maroney,* 399 U.S. 42 (1975) (affirming where the police had probable cause to believe that the robbers, carrying guns and fruits of crime, had fled the scene in the vehicle that was impounded and searched at the station house); *Lewis v. State,* 258 Ark. 242, 523 S.W.2d 920 (1975) (affirming the warrantless search of an automobile where the search was closely related to reason defendant was arrested, the reason the automobile was impounded, and the reason it was being retained); *cf. Goodwin v. State,* 263 Ark. 856, 568 S.W.2d 3 (1978) (reversing the warrantless seizure of a truck because the defendant was arrested for transporting controlled substances and there was no evidence that the particular truck had been used to transport controlled substances).

We do not affirm a warrantless search and seizure without a clear demonstration of an exception to the warrant requirement:

> As a general rule, searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment. This rule is subject to a few specifically established exceptions, and those who seek to prove an

exception must demonstrate that the exigencies of the situation made that course imperative. The burden is on the party claiming the exception, the State, to establish an exception to the warrant requirement and to show its need.

*Izell v. State*, 75 Ark. App. 377, 382, 58 S.W.3d 400, 403 (2001) (citations omitted).

In *Izell*, we reversed a warrantless search of defendant's vehicle after defendant was arrested holding that the search did not fall within an exception as a warrantless search since there was no legitimate basis for the officer's decision to inventory and tow defendant's vehicle over the defendant's objections, no probable cause existed to assume that the vehicle was related to any criminal activity; and the vehicle was, in fact, unrelated to the defendant's arrest, and the vehicle was not likely to be in danger of tampering or serve as a hazard to public safety.

The facts in this case, like the facts in *Izell*, cannot support the finding that the police had a legitimate reason to take the vehicle into custody that would in turn support the inventory search. I cannot agree with the majority's conclusion that the seizure of appellant's vehicle complied with constitutional and procedural safeguards. As discussed above, none of our previously recognized exceptions are present in this case. Nor can I agree with the majority's statement that the "unrefuted testimony of Sergeant Gilbert was that [appellant's vehicle] was taken in accordance with standard police procedures." The record contains no reference to any procedures of the El Dorado Police Department setting forth standard police procedures to take a citizen's vehicle. Even if the department had a manual setting forth the proper procedures to follow in order to seize a citizen's vehicle without a warrant, neither the manual nor reference to it is included in the record.

There was, however, evidence that the inventory search of the vehicle was done in accordance with the standard procedures established by the department to be followed after a vehicle was impounded. The evidence supports the conclusion that these inventory procedures were followed by Sergeant Gilbert. Nevertheless, the compliance with inventory procedures cannot legitimize the initial seizure of the vehicle. Neither can adherence to established inventory procedures justify an inventory conducted as the result of the unlawful seizure of the vehicle. As this court explained in *Mounts, supra,* a vehicle may be impounded and

inventoried only as the consequence of a *legal* arrest; if an arrest was illegal, an inventory of the vehicle would also be improper. *Mounts, supra* (emphasis added).

Warrantless seizures and searches are per se unreasonable under the Fourth Amendment. *See Izell, supra.* Rule 12.6(b) and our precedents applying the rule create no exception to the warrant requirement. Under the facts of this case, the seizure of appellant's vehicle was unreasonable and unlawful; consequently, there could be no lawful inventory of the vehicle's contents. Accordingly, I dissent.

MILLER, J., joins.